## KITTLE *v.* PFEIFFER *et al.*

P. EXECUTED to the City of San Francisco a quitclaim deed of certain strips of land to be used as public highways, under the name of "Belle Air Place" and "Pfeiffer Street," the same being part of a city lot occupied by himself wife as a homestead. Afterwards, the parcels thus sold never having been and opened or used as highways, P. and wife executed a mortgage upon their homestead, describing it as bounded in part by a line running a certain course and distance "to Belle Air Place," and thence a certain course and distance "to Pfeiffer Street." The mortgaged premises having been sold under a decree of foreclosure in an action to which the husband and wife were parties, and the plaintiff having acquired the title of the purchaser, the mortgagors commenced to erect a building upon the spaces designated as streets, claiming that the same remained a part of their homestead and had not been dedicated as highways. In an action by plaintiff to enjoin this work: *held*, that as to the mortgagees and those claiming under them, the mortgage was a dedication of the streets named as public highways, and vested in them a right of way; that the deed to the city might be referred to, to show the width of these

Kittle *v.* Pfeiffer.

streets; that the homestead claim was barred by the foreclosure and sale; and that the right of way passed to the purchasers as an appurtenance of the lot, and therefore free from the claim of homestead.

Injunction is the proper remedy to stay a threatened injury to a right of way.

Where land is described in a conveyance as running *to* a certain street, without other qualifications, the fee passes to the center of the street.

Where lots are sold as fronting on or bounded by a certain space designated in the conveyance as a street, the use of such space as a street passes as appurtenant to the grant and vests in the grantee in common with the public the right of way over the same.

APPEAL from the Twelfth Judicial District.

The facts are stated in the opinion of the Court.

*W. W. Stow*, for Appellant.

I.   By the execution of the deed to the city, Pfeiffer, the husband, so far as he could, dedicated Belle Air Place and Pfeiffer Street, as public streets to the public use. (1 Smith's Leading Cases, 180, 181; 11 Id. 188.)

II.   The mortgage of Pfeiffer and wife to plaintiff's testator was duly executed and acknowledged by defendants, and the decree of foreclosure and deed under it preclude them from claiming a homestead in any part of the lands embraced thereby.   (*Gee* v. *Moore*, 14 Cal. 477; *Bowman* v. *Norton*, 16 Id. 217.)

The decree of foreclosure, Sheriff's deed, etc., is conclusive that defendant had no homestead right in the mortgaged premises.   (1 Johnson's Cases, 492: 1 Bailey, 533.)

III.   The mortgage from defendants was a covenant to keep Belle Air Place and Pfeiffer Street forever open as public streets, for the convenience of plaintiff and his testators. (*Bissell* v. *N. Y. Central Railroad Co.*, 23 N. Y. Court of Appeals, 85; S. Smith's Leading Cases, 188; 1 Id. 180, 181.)

*John F. Swift*, for Respondents.

I.   The deed alone could not create a highway so as to make buildings remaining in the contemplated street a public or private nuisance.   There must be some act on the part of the city to take possession of the way, and an actual opening to the public, before the so-called streets could become a highway.

The streets so-called were at the time of the alleged grant the homestead of Pfeiffer and wife, and have ever since continued to be. The wife did not join in the deed, and as a consequence the grant was subject to the homestead rights of the respondents. (*Gee* v. *Moore*, 14 Cal. 472.) The city could not obtain possession of the land for the purposes of a street, or at all while it was so used.

II. The mortgage by Pfeiffer and wife passed no part of the so-called streets, but on the contrary, by express measurement (to wit, one hundred and twenty-two feet six inches) conveyed only to the outer edge of the street. The mortgage description conveys by measurement one hundred and twenty-two feet six inches south from the southerly line of Francisco Street to Pfeiffer Street, and one hundred and twenty-two feet six inches east from Stockton Street to "Belle Air Place." The jury and also the Court find as a fact, that the homestead of respondents, and which homestead is the very land claimed by appellants to be the so-called streets, commences one hundred and twenty-two feet six inches south from Francisco Street and one hundred and twenty-two feet six inches east from Stockton Street, and extends southerly and easterly. This, in fact, being the identical land claimed by appellants as streets.

Now, admitting the law to be that the conveyance of land bounded in general terms on a street, conveys the fee of the land to the center of the street (which is, to say the least, doubtful), here is an express exclusion of such an intent, by conveying by measurement in feet and inches, which measurement only goes to the outer edge of the street. In such cases, it has always been held that such measurement, showing an express intention to go to the edge of the way and no further, leaves the fee of the street in the grantor. (*Jackson* v. *Hathaway*, 15 Johns. 447 ; 1 Sumner, C. C. 21 ; 11 Pick. 194 ; 5 Wharton, 18 ; 2 Metcalf, 147 ; Notes to *Doraston* v. *Payne;* Smith's Leading Cases, 90.)

III. The land claimed for a street for the convenience of plaintiff, long before, at the time of, and ever since the making of the mortgage, was and is the homestead of the defendants, Pfeiffer and wife. The implied covenant in the mortgage is to be regarded

as a nullity, so far as the wife is concerned, and is precisely as if the husband had made such a covenant in a separate instrument. It would be subject to the right of homestead, which would continue in full force and unaffected by the covenant. The covenant could not bind the wife for any purpose. A married woman is incapable of making a covenant. (Bac. Ab. Tit. " Barron and Feme," 17 Johns. 167.) At common law she could not pass her estate except by a fine. Our statute has provided as substitute for the fine in a deed and acknowledgment; but this can go no further than the fine at common law, to wit: to convey her property. Our statute provides a certain mode of conveying the wife's property, and that her covenants shall not bind her. (Wood's Dig. Arts. 356, 357, p. 102.) A wife's covenant to convey her property, though founded upon valuable consideration and with the consent of her husband, is void at law and will not be upheld in equity. (3 Shepley, 304; 2 Kent's Com. 167 and notes; 17 Johns. 167.)

The implied covenant arising from describing land as abutting upon a street, does not create a street or way, or vest any estate in the covenantee, but is a mere collateral agreement. In this case, it is the covenant of the husband to permit certain land to be used as a street, which land had never been so used up to that time. In other words, an implied covenant to allow a street to be opened. Upon the husband's breach of this covenant, the covenantee has two remedies, to wit: 1. An action at law for damages; and 2. A suit in equity for specific performance.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

This is an action to enjoin the defendants from erecting and constructing buildings and other obstructions in certain streets in the City of San Francisco, known as " Belle Air Place " and " Pfeiffer Street." The Court below, after the trial of the issues raised by the parties, rendered a judgment dismissing the complaint, and for costs against the plaintiff, from which he appeals.

From the record in this case it appears, that on the twenty-fourth day of October, 1854, J. L. Folsom and the defendant, William A. Pfeiffer, conveyed, by quitclaim deeds, to the City of San Fran-

cisco, certain strips of land, to be forever kept open as public highways, under the name of "Belle Air Place" and "Pfeiffer Street," which deeds were duly recorded; that on the first day of October, 1855, the defendants, Pfeiffer and wife, mortgaged to the plaintiff's testators, fifty-vara lot numbered 1,494, described as commencing at the south-east corner of Stockton and Francisco streets; running thence easterly one hundred and twenty-two feet and six inches to "Belle Air" Street; thence southerly along Belle Air Street one hundred and twenty-two feet six inches to "Pfeiffer" Street; thence westerly along Pfeiffer Street to Stockton Street; thence to the place of beginning—to secure the sum of ten thousand dollars; that the mortgage was duly acknowledged and recorded, and on the —— day of February, 1857, the plaintiff's testators obtained a decree against said defendants, Pfeiffer and wife, foreclosing the mortgage, under which decree the mortgaged premises were duly sold and purchased by and finally conveyed to, plaintiff's testators, who went into possession under the Sheriff's deed, and they and the plaintiff have continued in possession ever since; that there is on the lot a brick building erected by Pfeiffer, standing on the corner of Francisco Street and Belle Air Place, with windows to light the same opening on Belle Air Place; and that the defendants commenced the erection of a building within the boundaries of Belle Air Place, along side of said brick building and obstructing said windows, and have also erected buildings and obstructions on Pfeiffer Street, and they threaten to inclose and totally obstruct said streets.

It also appears by the findings of the Court that the City of San Francisco or the public never accepted said conveyances, and that said strips of land were never opened or used by the city or public as streets or highways. It also appears that prior to these deeds to the city, the defendants occupied the two fifty-vara lots 1,493, and 1,494, which include the premises claimed as streets, residing thereon with their family, claiming the same as a homestead; that the wife never executed the deeds to the city, and they claim the premises as their homestead.

The Court below found from these facts that the tracts claimed to be streets never were created and never existed as public or

private streets; that the mortgage, so far as it related to these streets, bound the husband only, and not the wife, and did not create any street or way, and that the premises were the homestead of the defendants, and therefore the plaintiffs had no right of action.

The principal question involved in this case is, what acts are necessary to constitute a dedication of land to public use. The principal uses to which lands may be applied for public purposes, and to which the doctrine of dedication is applicable, are for roads, streets, alleys, squares, landings, cemeteries, and the like. Such dedication may be without any grant or conveyance. (*Abbott* v. *Mills*, 3 Vermont, 526; *State* v. *Catlin*, 3 Id. 533; *Vick* v. *Vicksburg*, 1 How. Miss. 379.) And where made by grant or conveyance, they are valid, even though there be no grantee *in esse* at the time, to whom the fee could be conveyed. (*Pawlet* v. *Clark*, 9 Cranch, 292; *Cincinnati* v. *Lessees of White*, 6 Pet. 431; *Beatty* v. *Kurtz*, 2 Id. 566; *New Orleans* v. *The United States*, 10 Id. 662; *Kennedy* v. *Jones*, 11 Ala. 63; *Brown* v. *Maning*, 6 Ohio, 303.) So a sale of lots by the owner according to a map or plan of a city or town, on which streets, squares, and landings are marked out, is held a dedication to public use of such streets, etc. (*Irwin* v. *Dixon*, 10 How. U. S. 81; *Wyman* v. *The Mayor of New York*, 11 Wend. 486; *The People* v. *Lambier*, 5 Denio, 9; *Rowan* v. *Portland*, 8 B. Monroe, 232.) These principles have also been held to apply to strips of land bordering upon navigable streams, in front of towns or cities, and which have been left or marked upon the town plat, as streets or public landings. (*Barclay* v. *Howell's Lessee*, 6 Peters, 498; *Rowan* v. *Portland*, 8 B. Monroe, 232; *Newport* v. *Taylor*, 16 Id. 699; *Cincinnati* v. *Lessees of White*, 6 Peters, 431; *Vick* v. *Vicksburg*, 1 How. Miss. 379.) A sale of lots described as bounding on certain streets, of itself is held as a dedication of the street to public use, without any further act. (Ang. on Highways, Sec. 142; *Abbott* v. *Mills*, 3 Vermont, 526; *Matter of Thirty-Ninth Street*, 1 Hill, 192; *Matter of Thirty-Second Street*, 19 Wend. 128.) And the dedication is the same whether the lot is bounded by the *center* of the street or the *side* of it. (*Matter of Thirty-Ninth Street*, 1 Hill, 192.) While in such

32

cases the public have a general right of way, the purchasers have a special right of way, as appurtenant to the lots thus purchased by them, which is a private interest vested in them, and of which they cannot be divested any more than of any other property. (*Matter of Seventeenth Street*, 1 Wend. 271; *Livingston* v. *The Mayor of New York*, 8 Id. 85; *Wyman* v. *The Mayor of New York*, 11 Id. 486; *Parker* v. *Framingham*, 8 Metcalf, 267; *Parker* v. *Smith*, 17 Mass. 415; *Alden* v. *Murdock*, 13 Id. 259.)

In *Bond* v. *Cunningham* (2 Cal. 368) it was held as an established principle, " that where lots are sold as fronting on, or bounded by, a certain space designated in the conveyance as a street, the use of such space as a street passes as appurtenant to the grant, and vests in the grantee, in common with the public, the right of way over such street; that such acts on the part of the grantor constitute a dedication of such street, and that he cannot afterwards so sell or dispose of it as to alter or defeat such a dedication." So it was held in *San Francisco* v. *Scott* (4 Cal. 114), that land may be dedicated to the public use as a street or highway, by deed or other overt act, or may be presumed from the lapse of time or acquiescence of the party. Again, in *Harding* v. *Jasper* (14 Cal. 642), it was held, that a dedication of a public highway might " be made either with or without writing, by any act of the owner, such as throwing open his land to public travel, or platting it and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate."

We think it clear, then, upon principle and authority, that the deeds to the city, as well as the mortgage to the plaintiff's testators were a dedication of these streets to public use, and vested a right of way in the plaintiff's testators, unless controlled by the homestead right set up by the defendants. In this case, the description of the lot in the mortgage is " one hundred and twenty-two feet and six inches to Belle Air Street," and the same distance " to Pfeiffer Street;" and as the distance named only carries the line to the *sides* of those streets, it is insisted that the fee did not pass to the *center* of the streets. It is a settled principle of law that where a line is described as running to a certain object, and the distance is also given, it will go to the point named, though the real distance

be greater or less than that specified, as a fixed object will always control distance in the description of lands. (*Colton* v. *Seavey*, 22 Cal. 497.) Here the description is *to* certain streets, and this would carry the line to the center of the street, if there was nothing further in the description to control or limit the lines. Whether the specification of the length of the lines will have the effect of limiting them to the sides instead of the center, is unnecessary to determine, because the plaintiff has a right of action, whether he is vested with the fee or only a right of way. Either gives him the right to prevent the defendants from obstructing the streets, and thereby injuring or destroying his vested right of passage. But the reason and authorities are very strong in favor of the doctrine that the conveyance passes the fee to the center of the street, subject to the public easement. (1 Smith's Leading Cases, 188, 189.)

The next question is how the claim of homestead affects this right. It is unnecessary to determine whether or not her signature was necessary to the deeds made by Folsom and Pfeiffer to the city, for the right of way claimed by the plaintiff does not depend upon those deeds, but upon the mortgage and the conveyance under it. The mortgage was duly executed and acknowledged by the wife, and she and her husband were parties to the suit for its foreclosure. The homestead claim, so far as it relates to the property covered by the mortgage, is barred by the decree of foreclosure and the sale and deed under it. This right of way passed to the purchasers as one of the appurtenances of the lot, and is therefore equally free of the claim of homestead. The deeds of Folsom and Pfeiffer can properly be referred to, to show the width of these streets, if for no other purpose. As these deeds to the city did not pass the *title* to the soil, but only operated as a dedication of public right of way over it, it may be doubtful whether they can be considered as a "sale or alienation," within the meaning of those terms in the homestead law. The plaintiff has a clear right to the remedy by injunction to stay the threatened injury to his right of way. (Pract. Act, Sec. 249.) It is the only remedy adequate to his case by which a continued injury like this can be prevented. (*Tuolumne Water Co.* v. *Chapman*, 8 Cal. 392; *Buckalew* v. *Estell*, 5 Id. 108; *Ramsey* v. *Chandler*, 3 Id. 90.) From the

pleadings and findings the plaintiff is entitled to the relief prayed for in his complaint.

The judgment is reversed, and the Court below is directed to enter a decree according to this opinion.