## BRYAN STONE *v.* B. S. BROOKS.

WHAT CONSTITUTES A PUBLIC STREET IN SAN FRANCISCO.—Under an Act of 1862, relating to the City of San Francisco, (Stats. 1862, 391, Sec. 1,) the mere dedication of land by the owner to public use, as public streets, lanes, alleys, or other public places, converts it into public streets, lanes, alleys or other public places, for the purposes of said Act, without any formal acceptance of the same as such by the Board of Supervisors, who may thereafter improve them in the manner provided

by law, although until this is done there may not be any obligation to keep them in a safe or passable condition for public use.

WHAT MAY BE DEDICATED AS A PUBLIC STREET.—A street or court, which is a mere *cul de sac*, may be dedicated to public use in like manner as a thoroughfare.

WHAT CONSTITUTES A DEDICATION OF LAND BY THE OWNER TO PUBLIC USE AS A STREET.—M., who was the owner of the middle one of three adjoining one hundred vara lots, which filled the space between Second and Third streets, in the City of San Francisco, offered it for sale, and sold portions of it at public auction in parcels or subdivided lots, each having a width of twenty-five feet, and fronting on either side on an extension of Perry street, which at that time, so far as actually opened, was but a *cul de sac*, extending at a right angle from Third street midway through the adjoining one hundred vara lot lying on Third street, and terminating at M.'s said lot. But at said sale M. had represented on a large map, by which the sale was made, said subdivided lots as each fronting on an extension of Perry street, made midway through her said lot, and terminating at the other adjoining one hundred vara lot lying on Second street. The sales were made to the highest bidder, and were absolute. *Held,* that in law this constituted a dedication by M. of that portion of her lot which was represented on said map as an extension of Perry street to public use as a street, and as such, was thereafter subject to the jurisdiction of the Board of Supervisors for all purposes of its improvement, which when made operates as a complete acceptance of the dedication, and perfects the right of the public to its use as a public highway for all purposes.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

In the Court below the plaintiff had judgment, and the defendant appealed.

The other facts are stated in the opinion of the Court.

*B. S. Brooks,* for Appellant, in *pro. per.*

The question is presented whether at the time that the Board of Supervisors declared their intention of grading Perry street, it was a public street, and whether they had any jurisdiction to order it graded. That Perry street is a street, and that those who have purchased lots fronting upon that part of it which is in question, have a right to its use, and to insist upon its remaining open, is admitted, but I insist that it is a *private* street, and deny that it is a *public* street. It is conceded that the *locus in quo* was never deeded to the city as a street. The title has not passed from the

defendant, and no act was ever done by the city, or any public authority, upon the *locus in quo*, treating it as a public street, until the acts in question. The sole fact from which a dedication is claimed is the selling by Mrs. Masterson of lots fronting on it.

I presume it will not be contested that, in order to give the Board of Supervisors jurisdiction, the premises in question must be a public street at the time they pass their resolution of intention and publish it in the newspapers. Was it at that time a public street? The very terms of the Act imply that there are private streets, and that over them the Board of Supervisors has no jurisdiction. But what is a private street? I take it, it is no street unless it is a space laid out, along which persons and vehicles can pass, and on which building lots front. It must be open to the passage of persons and vehicles, and designed and intended for that purpose—dedicated to that use. But if you stop there, you have only defined a road. You must add the building lots fronting on it, and perhaps the buildings themselves, before you get a street. Until the buildings are there, perhaps it is only an intended street. All this is essential to make a street; and even a private street must be a wide passageway for vehicles and persons, with houses fronting on it. If it is narrow, we should not call it a street, but an alley. The fact, therefore, that Perry street is a space left for the passage of vehicles and persons between the rows of buildings or building lots does not make it a public street. We admit that this is a street, but it is no thoroughfare. We admit that neither Mrs. Masterson nor her grantors can ever close it, and that those to whom she sold lots fronting upon it and their successors in interest have the right to have it always open as a means of access to those lots.

We admit, further, that all the authorities tend to show that acts *in pais* are sufficient to dedicate a public street; that the making of a map wherein is delineated a public street, leading from one highway to another highway, and selling lots in accordance with such map, is sufficient proof

of dedication. We will also concede the possibility of a *cul de sac* being dedicated to public use. But we insist that such making of map and selling of lots is not *sufficient* evidence of dedication to public use of a *cul de sac.* A thoroughfare is dedicated by its very creation, because its obvious purpose is to be a highway for all people. That is its natural use. But a no-thoroughfare is not dedicated by its creation, because its obvious purpose is to accommodate the people who reside upon it. The public have no way of using it. No one would go into the premises in question except, in the use of the lots fronting upon it, persons residing there, friends visiting them, or tradesmen delivering their goods. What use have the public of it? As Lord Chief Justice Campbell says, in *Bateman* v. *Black,* 14 E. L. & E. 71 : "If a way is not used in exercise of a right of passage, what use can the public make of it? (*Woodyer* v. *Haddan,* 5 Taunt. 126, 143, and cases cited; *Hinckley* v. *Hastings,* 2 Pick. 162; *Hobbs* v. *Sewell,* 19 Pick. 405.) As to what constitutes a dedication to public use, see *Hinckley* v. *Hastings,* 2 Pick. 162; *Hobbs* v. *Sewell,* 19 Pick. 405 ; *Commonwealth* v. *Newbury,* 2 Pick. 57 ; *Commonwealth* v. *Law,* 3 Pick. 408 ; *People* v. *Lamson,* 17 Johns. 277; *Matter of Seventeenth Street,* 1 Wend. 262; *Matter of Mercer Street,* 4 Car. 542 ; *Underwood* v. *Stuyvesant,* 19 Johns. 181.

By our statute the right to lay out and open streets is vested in the Board of Supervisors exclusively; and as the city is bound to keep all public streets in repair, and is liable in damages for all accidents that result from a neglect of this duty, the doctrine seems reasonable enough that a public street in a city could only be made by the city. (*Miller* v. *Gaslock,* 8 Barb. 157; *Badeau* v. *Mead,* 14 Barb. 329; *The City of Oswego* v. *The Oswego Canal Co.,* 2 Seld. 257 ; *Kirkham* v. *Sharp,* 1 Whart. 333; 4 Barr, 478; *Lewis* v. *Carstairs,* 6 Whart. 193; *Clements* v. *Village of West Troy,* 16 Barb. 251; *Holdane* v. *Trustees of Cold Spring,* 21 N. Y. 474; *Trustees of Jordan* v. *Otis,* 37 Barb. 50 ; *Doughty* v. *Bull,* 36 Barb. 488 ; *Bissell* v. *N. Y. Central R. R. Co.,* 26 Barb. 630; *Child*

v. *Chappell*, 9 N. Y., 5 Seld., 246; *People* v. *Kingman*, 24 N. Y. 559; *Cope* v. *Grant*, 7 Barr, 488.)

And I submit that, first, a no-thoroughfare is, presumptively, no highway; second, that to make it such, express dedication or affirmative action of the public authorities is necessary; third, that a public street in the City of San Francisco cannot be created except by the Board of Supervisors; fourth, that at the time the Board of Supervisors declared their intention of grading Perry street, and ordered the same to be done, the said Perry street was not a public street, and the Board of Supervisors had no jurisdiction in the premises; consequently, the assessment, to recover which the suit was brought, was void, and constituted no cause of action.

*Sharpstein & Hastings*, for Respondent.

The sale of lots, according to the map, by Mrs. Masterson constituted a dedication on the part of the grantor which she could not afterwards defeat by any act of hers. (*Breed* v. *Cunningham*, 2 Cal. 368; *Kittle* v. *Pfeiffer*, 22 Cal. 490.) The dedication was unequivocal, and took immediate effect. (*Barclay* v. *Howell*, 6 Pet., U. S., 506; Washburn on Easements, Sec. 21, p. 41; *Ward* v. *Davis*, 3 Sandf. S. C. 520.) In the latter case the Court say that such a dedication may be made by an act *in pais* as will forever extinguish the title of the owner.

The street having been kept open from the time of such dedication to the time when the Board of Supervisors proceeded to order the same improved, no question can arise in regard to its acceptance by the city. The cases cited by the counsel relate to cases where attempts were made to hold cities responsible for accidents caused by streets being out of repair, or to compel them to open and repair streets upon which they had never done anything to indicate an acceptance. In this case the proceedings of the Board constitute an acceptance of the street, if any is necessary to be shown.

The fact of its being a *cul de sac* makes no difference in this case. It is only in cases where there is doubt in regard to the dedication that it is of the slightest importance. And it is even questionable whether, under the later decisions, it is entitled to any weight in any case. (*Bateman* v. *Black*, 14 Eng. Law and Eq. 69; *People* v. *Kingman*, 24 N. Y. 568.)

There is, therefore, no question in this case but what the street was a public street. (*Noyes* v. *Ward*, 19 Conn. 265; *Hobbs* v. *City of Lowell*, 19 Pick. 405; *City of Cincinnati* v. *Lessee of White*, 7 Pet. 431; *Trustee, etc.* v. *Cowen*, 4 Paige, 510.) The dedication was made in 1861, prior to the passage of the Act of April 25th, 1862, by which it is declared to be an open public street. (Stats. 1862, Sec. 1, p. 341.)

By the Court, SAWYER, C. J.:

This is an action to recover from the owner of lots fronting on a small street in San Francisco, called Perry street, the portion of the cost of improving the street assessed on said lots. The contract and proceedings were all regular, and sufficient to constitute a cause of action, provided the Board of Supervisors had jurisdiction over the street, to authorize the improvement to be made, and their jurisdiction over the subject matter depends upon the question whether or not, at the time the work was authorized, Perry street was a public street. The plaintiff insists that it was, while the defendant, although admitting it to be a street, which the parties owning lots fronting upon it were entitled to use, and to have used, for all purposes of access to their said lots, still claims that it is not a *public* street, and therefore not subject to the jurisdiction of the Board of Supervisors.

The principal facts, as found by the Court, are substantially as follows: Prior to and during the year 1861, there were three one hundred vara lots fronting on the southerly side of Harrison street, extending from Third street, on the westerly, to Second street, on the easterly end of said tier of lots, constituting a block of one lot of one hundred varas,

or two hundred seventy-five feet square in depth on Second and Third streets, by three lots in length on Harrison street. The said lots were known by numbers, and, commencing on Third street and extending to Second, lay in the following order: Seventy-eight, Seventy-seven, Seventy-six. Prior to 1861, Perry street had been laid out—by whom it does not appear—from Third street toward Second, through about the centre of Lot Seventy-eight to Lot Seventy-seven, where it stopped. It was built up on both sides along the whole length, with houses which had no frontage on any street other than Perry street, by means of which communication was had with Third street, toward the west. In April, 1861, Mrs. Masterson, who then owned One Hundred Vara Lot Seventy-seven, had it platted into subdivisions upon a map, whereon Perry street was extended easterly from the point, where it then terminated, across said One Hundred Vara Lot Seventy-seven, to the westerly line of One Hundred Vara Lot Seventy-six—thus leaving One Hundred Vara Lot Seventy-six between the end of Perry street, as thus extended, and Second street. The subdivisions on said map were numbered from Number One to Number Thirty-three. Some of the subdivisions represented on said map as twenty-five feet front each, fronted on said Perry street. In said month of April, 1861, Mrs. Masterson sold portions of said one hundred vara lot in subdivisions according to said map, at public auction, the said subdivisions being represented on a large map at the sale. At said sale defendant purchased ten subdivisions, including the five subdivisions fronting on the northerly side of said Perry street, at the further end of said street, and extending from One Hundred Vara Lot Seventy-six westerly along the line of Perry street one hundred twenty-five feet toward Third street, and the five fronting on Harrison street immediately in the rear of said lots so fronting on Perry street. Other parties purchased the other five subdivisions, lying opposite on the southerly side of Perry street, and extending from One Hundred Vara Lot Seventy-six westerly one hundred twenty-five feet toward

Third street. The last named purchasers soon after built upon the lots so purchased, and the said buildings have ever since been, and they are now, occupied as dwelling houses, with no other front on any street except that on Perry street. Subsequent to the sale and conveyance of said subdivisions, amounting in the aggregate to one hundred twenty-five feet off the eastern side of said One Hundred Vara Lot Seventy-seven, and adjoining One Hundred Vara Lot Seventy-six, the inside tiers of which subdivisions fronted on both sides of Perry street for a distance of one hundred twenty-five feet, Mrs. Masterson sold, at private sale, the remainder of said one hundred vara lot, being the westerly portion toward Third street, and conveyed the same to one King, describing it as one hundred fifty feet front on Harrison street, by two hundred seventy-five feet deep, without mentioning Perry street. Defendant deraigns title from King by the same description. This description includes Perry street, and the land conveyed lies between the subdivisions fronting on Perry street first sold at auction, and Third street, into which Perry street opens. Thus Perry street, as thus extended by Mrs. Masterson through One Hundred Vara Lot Seventy-seven, is a street extending from Third street easterly five hundred fifty feet, through One Hundred Vara Lots Seventy-six and Seventy-seven, terminating at the line of said One Hundred Vara Lot Seventy-six, at a distance of two hundred seventy-five feet from Second street—the next street toward the east—forming a *cul de sac*, the ten subdivisions first sold at auction fronting on it at the further extremity. Perry street has never been conveyed to the city by any instrument in writing. The Court found Perry street to be a public street at the time of making the contract, subject to the authority of the Board of Supervisors to grade and improve it.

The Act of 1862, relating to the City of San Francisco, provides, that, " all the original streets　*　*　*　and all other streets, lanes, alleys, places or courts, now dedicated to public use, or which shall hereafter be dedicated to public

use   *   *   *   are hereby declared to be open public
streets, lanes, alleys, places or courts for the purposes of
this law." (Laws 1862, p. 391, Sec. 1.) The third section
then empowers the Board of Supervisors to order the whole,
or any portion of said streets, lanes, alleys, places or courts
to be graded and otherwise improved. If, then, Perry street
had been "dedicated to public use" by the owner, at the
time the work was ordered, it was, we think, a "*public*"
street, under the provisions of the Act, for the purposes of
the Act, without any formal acceptance by the Board of
Supervisors, and was subject to the jurisdiction of the
Board. If it had been dedicated to public use, the law
itself declares it to be a public street "for the purposes of
this law," and one of the purposes of the law, is, to provide
for its improvement under the authority and direction of the
Board of Supervisors.

The cases cited from the New York reports, to show that
there must be an acceptance by the proper authorities before
it becomes a public street, are under statutes containing
peculiar provisions, different from the one above cited, and
have reference to other questions than the one presented in
this case. Independent of such provisions, there does not
seem to be any necessity for a formal acceptance by some
particular Board of officers. Such a requirement would
destroy the common law doctrine of dedication. (*Holdane* v.
*Trustees of Cold Spring*, 23 Barb. 119; *Clements* v. *Village of
West Troy*, 10 How. Pr. 199, 200.) However this may be,
under the Act in question, the dedication makes it a street
for the purpose of giving jurisdiction to the Board of Super-
visors to authorize its improvement—for the purposes of the
Act. Until the Board actually takes jurisdiction for the
purpose of adapting it to actual public use, there may be no
obligation to keep it in a safe and passable condition, but it
is subject at any time to be improved for the benefit of the
public.

The only remaining questions are, whether a street situate
63

like the one in question, which is not a thoroughfare, but a mere *cul de sac*, is capable of dedication to public use. Some of the English Judges, in early cases, where the question did not necessarily arise, expressed some doubts as to whether a street or court, like the one in question, which is not a thoroughfare, can be dedicated to public use, as in *Wood* v. *Veal*, 5 B. & Ald. 456, *Woodyer* v. *Hadden*, 5 Taunt. 142. And in *Holdane* v. *Trustees of Cold Spring*, 23 Barb. 103, Mr. Justice Emmett and Mr. Justice Brown of the Supreme Court expressly held that a street closed at one end, and only communicating with a public road or street at the other, is not susceptible of being dedicated to public use as a highway. But the point was directly decided the other way in the late English case of *Bateman* v. *Bluck*, 14 Eng. L. & E. 69, all the Justices concurring. So, also, in the New York Court of Appeals, in the case of *People* v. *Kingman*, 24 N. Y. 559. (See also *Trustees of Rugby Charity* v. *Merryweather*, 11 East, 375, n. and *Wiggins* v. *Tallmadge*, 11 Barb. 461, and cases cited.) We think the cases of *Bateman* v. *Bluck*, and *People* v. *Kingman*, establish the better and safer rule.

Was there a dedication by Mrs. Masterson in fact? The Court does not say in express terms that she intended to dedicate, or that she did, in fact, dedicate this street to public use, but if such distinct fact, in addition to those expressed in the finding, be necessary to support the judgment, it must be presumed that it was so found, and would have been so expressed had the finding on the point been reduced to writing. It is, also, necessarily involved in the first conclusion drawn from the facts stated. Such has been the uniform ruling under the one hundred eightieth section of the Practice Act, as it now stands. Had the finding been so expressed, we could not have reversed it on an appeal upon the judgment roll alone.

But we think the facts, as found, constitute in law a dedication of a street to public use. The lots were laid out for sale with a view, it must be presumed, to the greatest profit. Lots in a city fronting on a public street, must be more

valuable than those situated upon private streets, which can only be enjoyed under greater or less restrictions. There is nothing in the transaction tending to show the sale of any limited right. The sale was at auction, to the highest bidder, and was absolute. The most valuable estate which the vendor could sell would necessarily pass, unless there was some express reservation. The lots were represented as bounded on Perry street, and a public street is more desirable and valuable than a private street. Perry street as it before existed, was but a *cul de sac*, opened, doubtless, by the proprietor of One Hundred Vara Lot Seventy-eight, for it was not originally there, and terminating at Mrs. Masterson's, Lot Seventy-seven. If it was then but a *private*, and not a *public* street, Mrs. Masterson had no right to pass through it from Lot Seventy-seven, or to open her extension or private street into it. She necessarily assumed that it was a *public*, and not a *private*, street, for the use of the purchasers fronting on it only. In extending the street through Lot Seventy-seven, as it was laid out by her and exhibited on the map at her auction sale, she necessarily represented that Perry street was a public street throughout its whole length, certainly through Lot Seventy-eight, which the purchasers at her sale would be entitled to use, otherwise they could have no ingress or egress in going to and from the lots sold. The only access to the lots on Perry street was by that street through Lot Seventy-eight. She must, therefore, have contemplated the same result with respect to her lots, that she claimed with reference to Lot Seventy-eight. Suppose the owner of Lot Seventy-six should have taken the same view that Mrs. Masterson did, and extended Perry street on through Lot Seventy-six to Second street. There would then have been a thoroughfare, unless the owners of Lots Seventy-eight and Seventy-six should deny a dedication to public use as to their portions, and construct a wall or fence across the streets at the boundaries of their lots and cut off all egress from Lot Seventy-seven. But a dedication to public use is one thing, and the acceptance and actual opening of the

street to public use, so that there can be no revocation, is quite another. The cases cited by appellant from New York make the distinction. Thus, in *Livingston* v. *Mayor of New York*, 8 Wend. 106, Mr. Chancellor Walworth says: "By making these strips of ground streets, laying out lots fronting on both sides, selling them, and by buildings being immediately put up by the purchaser, the facts, in my opinion, are sufficient to constitute a dedication at the time." That is just what occurred in this case. So in *Wyman* v. *Mayor of New York*, 11 Wend. 500, Senator Sherman says: "When a man lays out ground into lots, and sells and conveys the same, fronting on or bounded by streets, so laid out through the same, the easement, or right of way over such streets passes as appurtenant to the grant, and vests in the grantees *in common with the public*. Such circumstances are *per se* an immediate dedication of the streets, unless, as in the case of *Underwood* v. *Stuyvesant*, 19 Johns. 186, the streets laid out depend on a contingency, or are contrary to some local law." In *Clements* v. *West Troy*, 16 Barb. 253, Mr. Justice Harris says: "The principle settled by these cases is, that where lots are conveyed, bounded upon streets which have not been opened or laid out by the municipal authorities, the purchasers, and perhaps the public, acquire a perpetual right of way over such streets. The *act of the proprietor amounts to a dedication, so that when proceedings are instituted for making such streets public highways, the proprietor is only entitled to a nominal compensation for his interest in the land*. It is assumed, in all these cases, that the mere dedication of a street to public use does not make it a public street until the dedication is ratified by the public authorities. The same proceedings must be had for opening or laying out such street as if there had been no dedication." So the *City of Oswego* v. *Oswego Canal Co.*, 2 Seld. 263–267, and many other cases, recognize the dedication as something done by the owner, which precedes the act on the part of the public, which may be also necessary, under certain statutes, to make a public highway for all purposes. Our statute, however, as we have

seen, only requires, *for the purposes of the law,* a dedication as a prerequisite to the vesting of jurisdiction in the Board of Supervisors to improve the street. The making of the improvement and opening the street by that body is the acceptance which perfects the right and makes a street an open public highway for all purposes.

The questions in the cases cited by appellant are different. They arose principally in actions for trespass in obstructing the streets or for demolishing obstructions, and the question, therefore, was whether the street was, at the time in fact an open, public street, which had not only been dedicated by the former owner, but had been accepted, and had become, to all intents and purposes, a public highway. Here the question is, whether the street in question has been so far dedicated to public use by the former owner as to authorize the Board of Supervisors, under the provisions of the statute, to recognize and improve it as a public street. For further authorities on the subject of dedication by selling lots in accordance with a plat, see *Kittle* v. *Pfeiffer,* 22 Cal. 489; *Cincinnati* v. *White's Lesses,* 6 Pet. 431; *Irwin* v. *Dixion,* 9 How., U. S., 31; *United States* v. *Chicago,* 7 How., U. S., 196; *Rowan's Ex.* v. *Town of Portland,* 8 B. Monr. 235; *City of Logansport* v. *Dunn,* 8 Ind. 378. We do not see that it makes any difference whether the dedication is by a party who originally lays out a new town, or by one who newly and originally subdivides a portion of a town before laid out. The act of laying out a tract of land, whether large or small, into lots purporting to bound on streets, and selling the lots to others as bounding on streets without any limitation, is in itself an act of dedication. And we do not perceive that the act is any less significant, when a large lot only is subdivided, or when the street has but one outlet, and the party extends the street as far as he owns the land, and sells without restriction or reserve, than when he lays out a whole town, or when the street laid out is a thoroughfare. When a party extends an open court into his own land, and himself erects buildings on each side of it, and

rents them to tenants, there may be some reason for supposing that the court is left open for the sole accommodation of his own property, and his own tenants, and that no dedication to public use was intended. Such was the case of *Bateman* v. *Bluck*, 14 E. L. and Eq. 69, before cited. Yet in that case the jury found a dedication to public use. We can perceive no good ground, however, for supposing any such limited design in a case like the present, where the owner plats a tract of land into subdivisions fronting upon a strip represented to be a street, which extends to the bounds of the land, and sells them at public auction to the highest bidder, without any reserve or restriction, in the manner almost universal in the new towns throughout the United States. Such a limited dedication, unless expressly manifested, would be contrary to the universal understanding of our people, and they are very generally familiar with such proceedings, and are accustomed to largely invest their money at such sales.

We think, upon the specific facts stated in the findings, nothing to the contrary appearing, the Court could not have done otherwise than find an intention to dedicate, and a dedication in fact by Mrs. Masterson to public use. And this is sufficient under the statute to give the Board of Supervisors jurisdiction.

It follows that the judgment must be affirmed, and it is so ordered.

Mr. Justice RHODES expressed no opinion.