## CITY OF DENVER v. CLEMENTS.

1. A dedication of land to public use may be made either according to the common law, or in pursuance of statute.

2. A statutory dedication operates by way of grant; a common law dedication by way of *estoppel in pais*, rather than by way of grant.

3. When a vendee purchases a lot marked on a plat, duly recorded, of city property, the plat being referred to for a description of the premises conveyed, by a reasonable construction of the vendor's intention, the vendee is entitled to all the appurtenant advantages which the plat proclaims to exist, so far as the land embraced is owned by the grantor; the plat is a material part of the deed.

4. Where no express reservation is made in an absolute deed, the most valuable estate which the vendor can sell necessarily passes. Where platted streets are appurtenant to the land sold, it will be held that the proprietor intended the streets as *public*, and not as private ways.

5. Where a proprietor of urban property recognizes a plat in making a sale of lots, he will be estopped to deny a dedication of the streets designated upon the plat, embraced within his property, to public use. And the fact that the city acquiesces in the use, by the dedicator, of the streets for a limited period, and receives taxes thereon, will not estop the city from asserting the dedication.

    A dedication may be made *in præsenti* to be accepted by the public *in futuro*.

6. Where a statutory plat has been filed the fee of the streets vests in the city. Where the dedication is not statutory, the fee remains in the owner, and there is nothing for which the owner is to be compensated upon the mere opening of the street to public use.

### Appeal from District Court of Arapahoe County.

*Trespass quare clausum.* It was among other things stipulated by the parties in the court below as follows:

"And it is further agreed that the parties waive a trial by jury, and submit all the matters and issues of law and facts to the court, and this agreement is made a part of the record in this case. And the pleadings in the case subsequent to the declaration are hereby withdrawn. In the year 1859 one E. D. Boyd surveyed and made and filed a map of the city of Denver, and according to said map of Boyd, the land, to wit: the south half of the north-east quarter of section thirty-four, township three, range sixty-

eight, in Arapahoe county, Colorado Territory, upon which the trespass is alleged to have been committed, formed a part of said city so laid out by said Boyd. The title to the land included in the city of Denver, according to said map, was at that time in the United States. A copy of the aforesaid map of Boyd is exhibited in these proceedings to show the location of block 'A.' and of the streets and alleys on said land, as well as in the city of Denver generally, according to said map.

Alfred H. Clements pre-empted the said land—that is, the south half of the N. E. quarter of section 34, T. 3, R. 68, and eighty acres adjoining it, one hundred and sixty acres in all—on the 11th day of May, A. D. 1864, and the certificate of pre-emption issued to him on that day. Block 'A,' on which the trespass is alleged to have been committed, is a part and parcel of the said south half of the N. E. quarter of section 34, T. 3, R. 68, said block being 500 feet long and 400 feet wide. After the pre-emption of said land, Alfred H. Clements sold and conveyed to individuals lots on said land, according to the aforesaid map of E. D. Boyd, and in the conveyances of said lots, referred to said map of said Boyd for description of said lots so conveyed, but did not sell or convey any part of Block 'A.' On the 1st day of December, A. D. 1865, a patent issued for, and was received by, Alfred H. Clements for the 160 acres of land aforesaid, under the pre-emption certificate of May 11, A. D. 1864, and after the said patent was issued, Alfred H. Clements sold and conveyed divers lots and parcels of said land to individuals according to Boyd's said survey, and in conveyances thereof referred to said map and survey for description; but sold no part of Block 'A.' On the 23d day of January, A. D. 1869, Alfred H. Clements sold and conveyed all of his interest in said land to Caleb B. Clements. Caleb B. Clements sold to individuals some of the lots on said land according to the aforesaid map of E. D. Boyd, and in the conveyances thereof referred to said map of E. D. Boyd for description; but did not sell or con-

vey any part of said Block 'A.' On the 13th day of January, A. D. 1870, Caleb B. Clements filed in the recorder's office in Arapahoe county, Colorado Territory, his map of Clements' addition, embracing, among other lands, the said south half of the N. E. quarter of section 34, T. 3, R. 68; of which said Block 'A' was a part, and marked Block 'A' on said map, and according to said map so filed by C. B. Clements as aforesaid, no street nor alley ran through or on said Block 'A,' and the said block was not divided into lots, but said block was marked on said map 'Block A.' That Welton street in said map of Clements' addition is laid as it was laid out in the Boyd survey, except that portion of the same included in Block 'A.'

That in the year 1863, and during the months of January, February, March and April, A. D. 1864, Alfred H. Clements built and put large and valuable buildings and improvements on said Block 'A,' and at the same time inclosed the whole of said Block 'A' under one substantial fence inclosure. That, with the exception of said fence, none of said improvements on said Block 'A' occupied that portion of the said inclosure occupied by Welton street in the Boyd survey. That said improvements cost $15,000. That said A. H. Clements planted said block in trees and shrubbery, and made said block his home and residence; and said Block 'A' has so remained improved, inclosed and occupied by the said A. H. Clements and the subsequent purchasers from January, A. D. 1864, to the time of the trespass alleged in this suit. That, with the exception of said Block 'A,' the city of Denver has been in possession of Welton street through said Clements' addition since 1864, but has not improved, graded, or performed any work on said street through said addition.

The congressional grant for the relief of the citizens of Denver, passed congress May 24th, 1864. This grant covered section 33 and the west half of section 34, T. 3, R. 68. The congressional grant adjoined, but did not include, any of the lands in Clements' addition aforesaid. The entry of the probate judge of the lands embraced in the congress-

ional grant for the purpose specified in said act of congress, was made May 6th, A. D. 1865.

"If Welton street had been extended from the lands of the congressional grant through Clements' addition, as per map of E. D. Boyd, it would have run through Block 'A' as it has done since the time of the alleged trespass, to wit, the 1st day of September, A. D. 1874; and by said map of E. D. Boyd, Welton street is laid down as running through the lands which now constitute Block 'A.' If Glenarm street were extended from the congressional grant through Clements' addition, as per map of E. D. Boyd, it would run through Block 'A' so built upon the said block as aforesaid. On the 12th day of January, A. D. 1872, C. B. Clements sold and conveyed all of his interest in the aforesaid lands, of which Block 'A' was a part and parcel, to Richard T. Clements, the plaintiff in this suit, who is still the owner of said lands. Prior to filing the map of Clements' addition by C. B. Clements, on the 13th day of January, A. D. 1870, the city of Denver had established no grades and made no improvements upon the streets run through the land embraced in Clements' addition as per survey and map of E. D. Boyd, and had not used the said streets, and had not accepted said streets by any action on the part of said city or its authorities; but that said lands were described as being in the city limits by act of legislature of Colorado of 1861, 1864, 1866. That subsequent to the filing of said map of Clements' addition on the 13th day of January, A. D. 1870, the said city of Denver did not improve, grade, open up, or take possession of the streets as per map of E. D. Boyd, embraced in the lands of Clements' addition, until the time of the alleged trespass, and then only Welton street. That from the time of the entry of said lands by pre-emption, on the 11th day of May, A. D. 1864, by Alfred H. Clements, to the bringing of this suit, city taxes have been assessed and paid upon said block as a whole, as well as upon that part of said Block 'A' now claimed for street purposes, as upon the balance

of said block.   On the 11th day of September, A. D. 1874, without the consent, and against the protest, of said R. T. Clements, the city of Denver, by order of the city council, opened up Welton street, according to the aforesaid map of E. D. Boyd, through Block 'A' in Clements' addition, and in doing so removed and took down the inclosure around said Block 'A,' and took and appropriated a part of said Block 'A' for the purpose of opening Welton street, the part so taken and appropriated for said street being eighty (80) feet wide and four hundred (400) feet in length, and being the space designated as Welton street by map of said E. D. Boyd, and where Block 'A' now stands. The city refuses compensation for so opening up Welton street through said block, and taking possession of and appropriating a part of said block to street purposes.   It is for this alleged trespass, and the damages growing out of the same, that this suit is brought.   If the court shall find the defendant guilty, the court shall also assess the amount of damages upon the basis aforesaid; that is, by and upon such proper evidence as may be presented by either party and received by the court, as to the value of the land so taken as aforesaid, and converted into a street by the city authorities aforesaid, and any other damages, if any, growing out of such taking and appropriation of the lands aforesaid; costs in this case to go as in other cases in this court.   Nothing herein shall be so construed as to prevent either party from taking this case to the supreme court."

The following is a copy of the map referred to in the stipulation, showing a portion of Clements' addition in Boyd's survey of East Denver.   [See Map.]

"The area on the map, marked 'A,' is the Block 'A' alluded to in the stipulation, and upon which the alleged trespass was committed.   The area marked by the outer dotted lines shows Clements' addition to the city of Denver as filed in 1870, and covering so much of Boyd's survey as is shown on this map.

"The portion of Welton street as shown on this map,

and running through Block 'A,' indicates the ground taken and occupied by the defendant as set forth in the stipulation.   And Welton street, as a street, on both sides of Block 'A,' was in possession of defendant long prior to the alleged trespass.

"The line running diagonally across the map, with the lines running at right angles from it, show the congressional grant, and the position of said grant with reference to Block 'A.'

"The main map is a copy of so much of Boyd's map, known as Boyd's survey of the city of Denver, as it was made in 1859, and according to which survey the map sales of lots and blocks were made, as in the stipulation mentioned ; and that portion of the main map within the lines showing Clements' addition, indicates where lots and blocks were sold, as set forth in the stipulation.   The plot known as Clements' addition, etc., conforms in blocks and streets with said Boyd's survey, covering the same ground, except so much of it as is contained in Block 'A,' said block being shown on the plat of Clements' addition as it is in this map.   Block 'A' is the portion of land included within Boyd's survey that was surrounded by a fence and otherwise improved in 1863 and 1864, and upon which the house, etc., was constructed, as set forth in stipulation. There never was any indication upon the map or plat of Boyd's survey of said Block 'A,' nor did any map indicate it until the filing of the map of Clements' addition in 1870.   This map is to be taken as the map or plat referred to in the stipulation, and with above explanations is to be taken as part of said stipulation."

CHARLES S. THOMAS,

*City Attorney.*

V. D. MARKHAM, for plaintiff.

The foregoing was all the testimony submitted on the question of defendant's guilt.   The defendant having been

found guilty, evidence was introduced to prove the amount of damages sustained, at the conclusion of which the court was asked to assess the plaintiff's damages upon the following basis, which was done.

"*First.* Take the value of Block 'A,' as shown by the evidence in the month of September, A. D. 1874, without Welton street running through or on said block ; then take the value of said Block 'A,' as shown by the evidence in the month of September, A. D. 1874, with said Welton street running through said block, and the difference between the two amounts is the one item of damages.

*Second.* The plaintiff further asks for such other damages, if any, as were occasioned to the plaintiff by the acts of the defendant in and about the rebuilding of fences, the same having been torn down and removed by the defendant."

The court assessed the plaintiff's damages at $3,800, and gave judgment for that amount. The defendant having duly reserved exceptions, prosecutes this appeal.

Mr. CHARLES S. THOMAS, and Mr. THOMAS M. PATTERSON, for appellant.

Mr. V. D. MARKHAM, for appellee.

THATCHER, C. J. In 1859, E. D. Boyd made and filed a map of the city of Denver, included within whose limits was the south half of the north-east quarter of section thirty-four, township three, range sixty-eight. The title to this land just described was at that time in the United States.

On the 11th day of May, 1864, a certificate of pre-emption, and on the 1st day of December, 1865, a patent was issued to Alfred H. Clements for this tract. January 23, A. D. 1869, the patentee sold and conveyed all his interest in said land to Caleb B. Clements, who in turn sold and conveyed his interest therein to R. T. Clements. The patentee, and each of the subsequent grantees, sold and conveyed many lots and parcels of land to individuals ac-

cording to the Boyd survey, the conveyances thereof referring to the map and survey of Boyd for description, but did not dispose of any portion of Block 'A.' January 17th, 1870, Caleb B. Clements filed in the recorder's office of Arapahoe county, his map of 'Clements' addition,' which, among other lands, embraced the eighty acre tract above described, and upon which was delineated Block 'A,' without any street or alleys traversing it. The addition, except as to Block 'A,' conformed to the Boyd survey. Welton street, as marked on the Boyd plat, extended through Block 'A,' and its location upon the map of Clements' addition was identical with its location on the Boyd plat, except through Block 'A.'

This block was inclosed with a fence, planted in trees and shrubbery, and occupied by A. H. Clements and the subsequent purchasers for residence purposes, from January, 1864, to September of 1874, when the city of Denver, by virtue of an ordinance, took possession of so much of Block 'A' for street purposes, as was necessary to make Welton street a continuous one as designated on the Boyd plat.

City taxes were assessed and paid upon Block 'A' as a whole, continuously from the date of its entry by preemption up to the time this suit was brought. Although there are fifteen specifications of error, there are but two questions presented.

1. In view of all the facts and circumstances disclosed by the record, was there a dedication (for the use of the public) of Welton street through Block 'A?'

2. In the event that Welton street was not so dedicated through Block 'A,' were the instructions of the court in relation to the measure of damages to be allowed warranted by the agreed statement of facts?

A dedication of land to public use may be made either according to the common law, or in pursuance of statute. The distinction between these two kinds of dedication is quite manifest, and must be kept constantly in view in determining the rights of the city of Denver in this con-

troversy. When the dedication is statutory no act of acceptance on the part of the city is required to impose upon it the obligation to keep the streets in repair. The moment the plat of a city or an addition thereto is made, filed and recorded by the proprietor thereof in compliance with the statute, the fee of all the streets, alleys, avenues, highways, parks and other parcels of ground, reserved therein to the use of the public, vests in such city in trust for the uses expressed. R. S., 1868, § 5, ch. 84.

As at the date of the Boyd survey and plat, the title to the land now embraced in Clements' addition was in the United States ; as neither of the subsequent owners thereof had any interest therein, either legal or equitable, at that time, so far as the record shows, the filing of the plat cannot be said to have operated to vest the fee of the streets therein designated in the city for public use.

A statutory dedication operates by way of grant. The law surrounds the act of dedication with all the formalities and solemnities necessary to the creation of a grant. The plat must be signed, acknowledged and recorded. Without a substantial compliance with the statute by the proprietor of a city or addition thereto, the estate in the streets intended to be conveyed would not pass to the city in trust. That there was no statutory dedication prior to the filing of the plat of Clements' addition in 1870 is clearly apparent from the record.

Was there a common law dedication for the use of the public ?

A common law dedication operates by way of *estoppel in pais*, rather than by way of grant. We must, therefore, consider the acts of the several proprietors of the Clements' tract for the purpose of determining whether by their acts they are precluded from denying the existence of a public easement through the entire length of Welton street as designated on the Boyd plat.

The constant sale of lots in this addition after the acquisition of the title from the United States, extending through a period of five years, up to the date of the filing of the

statutory plat, by reference to the Boyd map for descrip-· tion, upon which were laid out streets and alleys, in accordance with the original plan of Denver City, must be regarded as a ratification and adoption of the Boyd map as binding upon A. H. Clements and the subsequent proprietors, as though the plat had been prepared at his or their instance. When a vendee purchases a lot, marked on a plat of city property, designating streets thereon, the plat being referred to for a description of the premises conveyed, the popular understanding, and a reasonable construction of the intention of the grantor are, that the vendee, by virtue of the purchase, is entitled to all the appurtenant advantages, privileges and easements, which the plat proclaims to exist, so far as the land embraced by it is owned by the grantor. A lot is bought as urban property, and with the conveyance of the land pass all the incidents necessary to a proper enjoyment of the grant. The plat to. which reference is made is a material part of the deed, which must be construed to have the same effect as if the plat had been incorporated into it. By the plat, the right which each lot-holder has in common with other lot-holders and the public in the streets of the city is exhibited. *Birmingham* v. *Anderson*, 48 Penn. 258; *Rowan's Ex.* v. *Town of Portland*, 8 B. Monr. 232.

Where no express reservation is made in an absolute deed, the most valuable estate which the vendor can sell necessarily passes ; hence, as public streets are more desirable and valuable than private ones, it must be held that the proprietor intended to convey, as appurtenant to the lots sold, the platted streets as *public* and not as private ways. *Stone* v. *Brooks*, 35 Cal. 499.

The generally accepted doctrine upon this subject is expressed by Angell on Highways, § 149, in the following language : " In this country there is quite a large class of cases in which dedication has been inferred from the sale of land, described by reference to a map or plat, in which the same is designated as laid off into lots, intersected by

streets and alleys. It may be stated as a general rule, that where the owner of urban property, who has laid it off into lots, with streets, avenues and alleys intersecting the same, sells his lots with reference to a plat, in which the same is so laid off, or where there being a city on which this land is so laid off, he adopts such map by sales with reference thereto, his acts will amount to a dedication of the designated streets, avenues and alleys to the public."

It is a matter of common observation that although streets may be designated on a city plat, or on a plat of a city addition by the proprietor thereof, generally they are not all thrown open to the public until after the sale of lots thereon, and frequently not until the public convenience requires it. Until such time, the original character of the platted premises, as prairie, timber, or fallow lands remains unchanged. But whenever the increasing population and growing business interests of the city necessitate the opening of such streets, the effect of the adoption of the plat of the city, within the corporate limits of which the addition is situated, and on which plat are designated the streets running continuously through the addition, and with reference to which city plat the proprietor of the addition, as often as opportunity offers, sells lots, is to declare and dedicate the streets within the addition to public use. The unqualified recognition of the plat is not consistent with any other construction. The fact that the city acquiesces in the use of the streets for a limited period does not militate against this view. Nor is it thought that the payment of taxes on that portion of Block 'A' through which Welton street passes, the fee to which is still in the proprietor of the addition, estops the city from asserting the dedication.

Before the acceptance of the dedication the city was not bound to keep the streets open and in a safe condition. Although until the acceptance, the city was under no obligation to repair, the proprietor was nevertheless bound by his acts. *Mayor of Jersey City* v. *Morris Canal & Banking Co.*, 1 Beas. 554.

A dedication may be made *in præsenti* to be accepted by the public *in futuro*. *Mayor of Jersey City* v. *Morris Canal & Banking Co.*, 1 Beas. 563 ; *Trustees of M. E. Church* v. *Council of Hoboken*, 33 N. J. 22 ; *Town of Derby* v. *Alling*, 40 Conn. 410.

It is held in the earlier cases in the State of New York, that even where there has been a dedication of streets to public use, a condemnation is necessary, and that the dedicator, even after the sale of lots abutting on the streets, is entitled to *nominal* damages, as a compensation for the fee of the streets in the front of such lots, which under the laws of that State vests in the city for the uses declared. *Wyman* v. *The Mayor of New York*, 11 Wend. 486 ; *Livingston* v. *The Mayor of New York*, 8 id. 85.

The doctrine of these cases, so far only as relates to the dedicator being entitled to any compensation under the circumstances, is repudiated by the court of appeals in *Bissell* v. *New York Central R. R. Co.*, 23 N. Y. 66, on the ground that with the sale of lots the fee of the street to the center thereof in front of the lots sold, passed to the vendee. But where the ots fronting on a street dedicated to the public use have not been sold by the proprietor, the fee of such street to the center in front of the unsold lots remains in him, charged with a public easement; and if upon condemnation the fee under the statute passed to the city, the proprietor would be entitled to nominal damages.

Where a statutory plat has been filed, the fee of the streets, as we have seen, vests under the law in the city. But as when the dedication is not statutory no such result follows, there is nothing for which the lot-owner is to be compensated. The fee does not vest in the city. The corporate authorities by their acceptance assert jurisdiction over a street dedicated to public use, and assume obligations in respect thereto, without divesting the fee from the owner of the abutting lots.

As so much of Welton street as extended through Block 'A' was a public street by dedication before the removal

of the fence that obstructed it, the city council was but exercising its lawful authority in causing the obstruction to be removed. The finding of the court upon the agreed statement of facts should have been for the defendant.

For a further discussion of the dedicatory effect of a sale of city lots with reference to a plat, see Dillon on Mun. Corp., §§ 503, 505, and cases cited.

To hold that the city must compensate the appellee where an easement already dedicated to the public is accepted by its statutory representative, is to declare that a donee must pay for the privilege of accepting a gift. The title to the fee in a street, for which, in New York, as we have seen, after there has been a dedication to the public by the proprietor, merely *nominal* damages are allowed, in the case before us, remains where it was before the acceptance of the easement by the public's statutory representative, and hence the ground for even nominal damages, which holds in that State, does not exist here.

As this disposes of the case, it is unnecessary to consider the other errors assigned. The judgment of the court below is reversed, and the cause remanded for further proceedings according to law.

*Reversed.*