THE CITY OF DENVER, APPELLANT, v. THE DENVER & SANTA FE RAILWAY COMPANY, AND THE ATCHISON, TO-PEKA & SANTA FE RAILROAD COMPANY, APPELLEES.

1. HIGHWAY—DEDICATION—ACCEPTANCE.—To constitute a road a public highway at common law there must be both a dedication and an acceptance, either express or implied.
Unless otherwise provided by statute, a dedication without acceptance is, in law, merely an offer to dedicate, and such offer does not impose any burden, nor confer any right, upon the public authorities, unless the road is accepted by them as a highway, though if used by the public and treated by the public authorities as a highway, acceptance of the dedication may be implied.

2. RAILROAD IN CITY STREET.—Where a railway company gains lawful possession of private land as a right of way, the land being located outside any municipal corporation, the subsequent annexation of such land to a city does not render the railway company's possession unlawful, nor does the subsequent acceptance of such land as a public street or highway by the city, render the occupation and possession of said street by said railroad a · nuisance subject to be abated by mere resolution of the city council.

*Appeal from Superior Court of the City of Denver.*

ACTION to restrain the city of Denver from removing railroad from street.

Appellees were plaintiffs below; the case was submitted upon the evidence introduced in their behalf ; the defendant city offered no evidence.   The facts necessary to an understanding of the opinion are in substance as follows :

Prior to the month of January, 1882, the Denver Circle Railroad Company constructed and operated its railroad leading out of the city of Denver in a southerly direction, through a certain town-site then called Fairmont, and beyond.

At the time of the construction of the Circle road Fairmont was simply a town-site platted into lots and blocks, streets and alleys ; and the Circle road was constructed through what was called Bridger street in said Fairmont.

The town-site of Fairmont consisted of 376 lots owned

and laid out by a corporation called the Denver Land and Improvement Company; 362 of said lots were owned by said company at the time the Circle road was constructed; it does not appear that any of the 14 lots disposed of abutted on Bridger street through which the Circle road was constructed; and the trial court upon objection from defendant refused to allow plaintiffs to show affirmatively where said 14 lots were located. But it was shown by parol without objection that the trustees of the Denver Land and Improvement Company got together and consented to the construction of the road through the town-site of Fairmont, and were more or less active in promoting the construction of the road through said town-site. Archie C. Fisk, president and the largest stockholder of the Improvement Company and also a director of the Circle railroad company and a large owner of its securities, was particularly active in promoting such construction.

Fairmont became a part of the city of Denver in 1883, after which Bridger street was called West Third avenue.

In 1887, the Circle railroad, together with the rights and franchises of the Circle Railroad Company, was acquired by, and passed into the possession and control of plaintiffs.

In September, 1888, the defendant city, in pursuance of a resolution of its city council, caused notice to be served upon plaintiffs to remove their railroad tracks from West Third avenue, formerly Bridger street. The resolution and notice were based upon the claim that the Circle road had been constructed in said street without lawful authority; and the defendant city further notified plaintiffs of its intention to tear up and remove said railroad from said street in case plaintiffs neglected or refused so to do. Thereupon this suit was commenced to restrain the defendant city, its agents and servants, from carrying out its threatened action in the premises.

The decree of the district court was in favor of plaintiffs, and enjoined the city from removing or interfering with said railroad in said street. The defendant city brings this appeal.

Mr. JOHN F. SHAFROTH, Messrs. SULLIVAN & MAY and Mr. F. A. WILLIAMS, for appellant.

Mr. CHAS. E. GAST and Messrs. WELLS, McNEAL & TAYLOR, for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

It was about the first of January, 1882, when the Denver Circle Railroad was first constructed and operated through what was then called Bridger street in the town-site of Fairmont. Said town-site was not then within the limits of any city or other municipal corporation; it was a small parcel of land, only forty acres, situate in Arapahoe county, Colorado; it had no inhabitants or buildings; it was a town only on paper. The strip of land called Bridger street at that time, though formally dedicated to the public by the owners as a public highway, had never, in any manner, either express or implied, been accepted or recognized by the public authorities as a public highway, nor had it ever been used as such by the traveling public; it was simply "wild prairie."

So far as the evidence discloses, Fairmont continued to be a paper town only, without municipal organization, without inhabitants or buildings, and said Bridger street continued to be unused and unaccepted as a highway, until after the territory composing said town-site was included in the enlarged limits of the city of Denver by act of the general assembly of February 13, 1883. In fact, it does not appear in the record of this cause when or how Bridger street, so called, first became a public street or highway, nor when its name was changed to West Third avenue.

To constitute a road a public highway at common law there must be both a dedication and an acceptance, either express or implied. Unless otherwise provided by statute, a dedication without acceptance is, in law, merely an offer to dedicate, and such offer does not impose any burden, nor confer any right, upon the public authorities, unless the road is

accepted by them as a highway, though if used by the public and treated by the public authorities as a highway, acceptance of the dedication may be implied. *Field v. Manchester*, 32 Mich. 279; *Manderschid v. Dubuque*, 29 Ia. 73; *Holmes v. Jersey City*, 12 N. J. Eq. 297; *Hayden v. Stone*, 112 Mass. 351; *Grube v. Nichols*, 36 Ills. 92; *Town of Salida v. McKinna*, 16 Colo. 523; *Starr v. The People, ante*, p. 458; Angell on Highways, secs. 132, 157; Elliott on Roads and Streets, 87.

It clearly appears that the Circle railroad company constructed and operated its road through Bridger street long before the same became a public street or highway, either in law or in fact, and while the same was without the limits of the city of Denver. Furthermore, it is clearly established that when the road was so constructed the strip of land called Bridger street belonged to the Denver Land and Improvement Company, a private corporation, and the road was constructed thereon by the consent of that company. Though the record of such consent seems not to have been preserved, it was nevertheless satisfactorily proved at the trial that the railroad company obtained possession of said land as a right of way by the voluntary action of the Improvement Company, and so its possession was not unlawful. Under such circumstances, the subsequent annexation to the city of the land of which the railroad company was so lawfully possessed did not render the company's possession unlawful; neither did the subsequent acceptance of said Bridger street as a public highway, nor the changing of the name of said street, render the occupation and possession of said street by said company a nuisance subject to be abated by mere resolution of the city council. *City of Denver v. Mullen*, 7 Colo. 345; *Omaha & N. N. Ry. Co. v. Reddick*, 16 Neb. 313.

It is established by the evidence that the Circle railroad company and its successors continued in the peaceable, undisputed possession of the railroad constructed through the town-site of Fairmont, and continued to operate the same from the date of its construction for a period of six and a half years before any objection to their so doing was made,

and before notice was given to remove the railroad therefrom. There is no claim that there has ever been any special fault or negligence in the manner of operating said railroad at said place.

Under all the circumstances, it is clear that the city of Denver could not lawfully proceed, upon its own motion, to tear up and remove said railroad as it threatened to do. The injunction was therefore properly granted. The judgment of the superior court is affirmed.

*Affirmed.*