TRINE v. CITY OF PUEBLO.

1. DEDICATION, WHAT CONSTITUTES.

To constitute a valid common law dedication of land to a public use there must be an acceptance, express or implied.

2. SAME—OFFER—REVOCATION.

Unless otherwise provided by statute, a dedication of land to public use without acceptance is merely an offer to dedicate, and a conveyance of the land, subsequent thereto, is a revocation of such offer.

*Appeal from the District Court of Pueblo County.*

THE appellant, as the owner in fee of the following land, situate in the city and county of Pueblo, and described as follows : " Beginning at a point on the east line of Santa Fé avenue two hundred and fifty-six (256) feet north of the north line of Ninth street, in the city of Pueblo, in said county ; thence north, along the east line of said Santa Fé avenue, eighty (80) feet ; thence east three hundred and fifty-two (352) feet ; thence south eighty (80) feet ; thence west three hundred and fifty-two (352) feet to the place of beginning,"—brought this action to enjoin the appellee from tearing down and destroying certain fences and structures thereon, and converting the same into a public street, with out making compensation therefor.   Appellee denies the right of appellant to the relief sought, upon the ground that appellant's grantor dedicated said premises to the town of Pueblo, as a public street, in 1873, and insists that by virtue of said dedication it has the lawful right, as successor to the town of Pueblo, to enter upon and use the same as a public street.   Upon the testimony introduced, the court below made findings of fact, and rendered judgment thereon, as follows :

" (1) That prior and up to the year 1870 one Josiah F. Smith was the owner of the quarter section of land out of which this tract was carved, deriving his title from the United States government.

"(2) That on the 22d day of March, A. D. 1870, the town of Pueblo was organized as a municipal corporation under the laws of the territory of Colorado.

"(3) That the land in controversy was in the corporate limits of the said town of Pueblo, during all the times and dates of the respective deeds under which the defendant claims.

"(4) That all the land lying east of Santa Fé avenue, in said city, and north of Ninth street and west of Summit street, for a distance of about sixteen hundred feet, has never been platted into lots and blocks or streets by any recorded plat executed by the owner or owners of such land.

"(5) That, at the date of the execution of the deeds relied upon by the defendant to prove dedication, all the land lying east of Santa Fé avenue and north of Ninth street, to the Fountain, was vacant and unplatted ground, until the date of the recording of the plat of Fountain addition.

"(6) That, until the commencement of this suit, there were no streets graded upon any of the land lying east of Santa Fé avenue and north of Ninth street, and bounded upon the east by the Fountain, but that since the commencement of this suit said Summit street has been made passable from Eighth street to a point about fifty feet beyond the land in question.

"(7) That the character of the ground as it at present exists, for the entire length of Tenth street extended east from Santa Fé avenue and across the Fountain, is such that it could not be traveled upon safely as a street, and that it is scarcely passable.

"(8) That the land in controversy was practically a cul-de-sac; that the same was never surveyed or staked off as a street,—that is, was never graded or worked in any manner by the city or town of Pueblo,—and from the evidence, and the natural growth of sage brush from a personal view of the same by the court, it is evident that the same was never traveled its entire length, from east to west, by anybody, with a vehicle of any kind.

" (9) That the public has never traveled upon the land in controversy as a street, but that different roads have been made across the same by persons who evidently were traveling in the direction which said street would run, and that the travel across the same was of the same kind that the adjacent and other vacant lands of the city are frequently crossed by the public.

" (10) That Lewis Conley, grantor of the plaintiff, never made a plat of the land in controversy, nor did he in any deed refer to any plat, of any kind or description, made by any other person.

" (11) That the city of Pueblo, or the former town of Pueblo, has never, by any formal or informal act, accepted the land in controversy as a street.

" (12) That Lewis Conley did not return the land in controversy for taxes, nor, it is shown by the evidence, did he ever know that the public had in any manner used or driven across the same, even to the extent as indicated in the above findings.

" (13) That the first deed which forms a part of the chain of title under which the defendant claims is from Josiah F. Smith and wife to O. H. P. Baxter, of date November 9, 1871, which, by its recital, calls for the north line of Tenth street from where it had theretofore been platted, a distance of fifty-nine (59) feet west from Santa Fé avenue; that said deed, together with the plat of Smith's addition, filed for record July 17, 1871, would make Tenth street a public street extending east to its intersection with Santa Fé avenue.

" (14) A deed, No. 2, from Josiah F. Smith to Lewis Conley, dated November 9, 1872, describes the tract of land lying east of Santa Fé avenue, and bounded thereon north of Ninth street, 352 feet wide and 566 feet long, and contains this additional recital: 'Being a piece of land comprising about two blocks, of the size of blocks in the town of Pueblo, with the width of a street eighty feet wide, to wit, Tenth street, lying between said blocks.'

" (15) That conveyance No. 3 is a trust deed from Lewis

Conley to Henry C. Thatcher, trustee, of date December 3, 1872, which describes the land as follows, to wit : ' Commencing at the point of intersection of the east boundary line of Santa Fé avenue and the north boundary line of Ninth street, in the town of Pueblo; running thence north, along the east boundary line of Santa Fé avenue, 256 feet; thence east 352 feet; thence south 256 feet; thence west 352 feet, to the place of beginning,'—given to secure the First National Bank, etc.

" (16) The next conveyance of said chain of title made by Lewis Conley and wife to John V. Farwell, of Chicago, as trustee, of date February 15, 1873, to secure a note for $2,000. The description of the property therein is as follows : ' All of the certain lot, piece, or parcel of land situate, lying, and being in Pueblo, county of Pueblo, territory of Colorado, known and described as follows, to wit: Commencing at the northeast corner of Santa Fé avenue and Tenth streets, in the said town of Pueblo, and running north, along the east line of Santa Fé avenue, 229 feet, to a point ; thence east 352 feet, to the west line of Summit street; thence south, along said line, to Tenth street; thence west, along the north line of Tenth street, to the place of beginning. '

" The court further finds that at the time of the execution of this trust deed to said Farwell, trustee, the grantor, Lewis Conley, was not then and there the owner of any estate or interest whatsoever in or to any part or portion of what is denominated in said deed, by way of description, as 'Summit street,' nor did said Conley then and there claim any ownership therein, nor was said Conley the owner of any part or portion of the premises so designated as 'Summit street' at any time prior thereto.

" The court further finds that, as a matter of fact, there was no public street in existence, known as 'Summit street,' and extending northward beyond the premises in controversy, so as to abut upon any part or portion of the premises described in and conveyed by the last above mentioned trust deed ; nor, as a matter of fact, had said alleged Summit street

been dedicated in any way as a street, upon any part or portion thereof which would abut upon any part or portion of the premises so described in and conveyed by said last above mentioned trust deed, nor was any part or portion of the premises so described as 'Summit street' in said trust deed ever used, laid out, or in any manner in existence, as a street, prior to or at the time of the execution of said last mentioned trust deed.

" (17) The court further finds that said Lewis Conley never made any conveyance of or concerning the property in controversy to any person or persons until he executed the deed to the plaintiff in this action, of and to the same; nor did he exercise any act of control or ownership over the same from 1873 to the date of the execution of the conveyance to said plaintiff.

" (18) That the two trust deeds above named, to property lying on the north and south side of the premises in controversy, were foreclosed, and deeds executed to the purchaser at foreclosure sale, and duly recorded, in the year 1877.

" (19) That the plaintiff owns the fee in the premises in controversy.

" (20) The court further finds that on June 8, 1872, the said Lewis Conley filed a plat designated ' Conley's Addition to East Pueblo,' an addition to the town of Pueblo to the east of the land in controversy, showing a street thereon corresponding with the lines of Tenth street, if extended due east.

" (21) That the court further finds that by the said trust deed heretofore referred to, made by Lewis Conley and wife to John V. Farwell, of Chicago, as trustee, of date February 15, 1873, that said Lewis Conley thereby manifested by the recitals in said deed a present intent then and there to make an irrevocable dedication of the land in controversy to the public, as a street; to which finding of fact counsel for plaintiff then and there excepted.

" Wherefore, it is adjudged and decreed by the court, upon the findings of fact above stated, that, under the law appli-

cable to such facts, the grantor of the plaintiff herein, long prior to the time when plaintiff acquired title to the land in controversy from said grantor, had irrevocably dedicated said parcel of land to public use as a street, which dedication is binding upon said plaintiff; that the claim of said defendant to the said parcel of land, as a street, by virtue of a common law dedication, is valid; that the said defendant has right and authority, in law, to enter upon said parcel of land, and tear down and remove therefrom any and all structures which said plaintiff has erected thereon, and convert the said parcel of land into a public street, without making any compensation therefor to the plaintiff, and without being guilty of trespass or any wrong whatsoever.

"It is further ordered, adjudged, and decreed by the court that the injunction heretofore granted in this action be, and the same is hereby, dissolved, and it is further ordered, adjudged, and decreed that the said defendant recover against the said plaintiff its costs in and about its suit in this behalf expended, and judgment is entered accordingly; to which findings of fact and conclusions of law thereon, as well as the final judgment rendered herein, the plaintiff did then and there except."

Messrs. WALDRON & DEVINE, for appellant.

Messrs. DIXON & DIXON, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

The sole question presented is whether plaintiff's grantor, by adopting the north line of Tenth street as a boundary of the land conveyed to J. V. Farwell in the trust deed executed February 15, 1873, made an irrevocable dedication of the strip of land in controversy as a public street. We are relieved from determining what effect should be given to such a description as evidencing the intention of Conley to make a dedication, or whether the court below was correct in its conclusion that "Conley manifested by the recitals in

said deed a present intent, then and there, to make an irre-
vocable dedication of the land in controversy to the public,
as a street," since, under the rule announced in *City of Den-
ver v. Denver & S. F. Ry. Co.*, 17 Colo. 583, to constitute a
valid common law dedication there must be an acceptance,
either express or implied. Justice Elliott, speaking for the
court in that case, said : " To constitute a road a public high-
way at common law, there must be both a dedication and an
acceptance, either express or implied. Unless otherwise pro-
vided by statute, a dedication without acceptance is, in law,
merely an offer to dedicate ; and such offer does not impose
any burden nor confer any right upon the public authorities,
unless the road is accepted by them as a highway."

Until acceptance, therefore, the description of the land
by Conley in the trust deed to Farwell, if deemed sufficient
to show the *animus dedicandi*, was a mere offer, and did not
constitute an effectual dedication. The court below found
expressly " that the city of Pueblo, or the former town of
Pueblo, has never, by any formal or informal act, accepted
the land in controversy as a street."

It is clear, therefore, that the subsequent conveyance of
the land by Conley to plaintiff was a revocation of the offer
to dedicate the same as a street, if such an offer on his part
may be inferred from the description in the trust deed, in
the absence of a plat showing a street covering the premises
in dispute, there having been no acceptance by the appellee
at the time of such conveyance. *City of Eureka v. Crohgan*,
81 Cal. 524 ; *People v. Reed*, 81 Cal. 70.

We think the doctrine announced in *City of Denver v.
Denver & S. F. Ry. Co.*, *supra*, is decisive of this case ; and,
upon the facts found, appellee has no right to use the land
in controversy as a public street without making compensa-
tion to appellant therefor.

For the foregoing reasons, the judgment of the court be-
low will be reversed, and the cause remanded, with instruc-
tions to enter judgment in accordance with this opinion.

*Reversed.*