[No. 4291.]

30    467
20a  573

THE TOWN OF MANITOU V. THE INTERNATIONAL TRUST
COMPANY ET AL.

THE TOWN OF MANITOU V. TOWNSEND ET AL.

**Dedication—Evidence—Findings of Trial Court.**

The findings of the trial court as to whether or not the premises in controversy had been dedicated to the public will not be disturbed where such findings are supported by the evidence. The evidence in this case held sufficient to support the finding that there had been no dedication.

*Appeal from the District Court of El Paso County.*

On the 12th of February, 1874, The Colorado Springs Company, being the proprietor of certain lands in El Paso county, caused to be executed and acknowledged, and filed for record, a certain plat of said lands which is entitled: "Map of Manitou, El Paso, County, Colorado." On this map no words are used by which the streets, alleys, avenues, parks, paths, or other public places are dedicated to the public, although in the acknowledgment language is employed indicating an intention to make a statutory dedication. The following appears upon the plat: "The roads and paths through lot 36, Block A, * * * are private roads and paths and subject to be closed by the mutual consent of the owners of the lots bounded by said roads and paths." In the year 1876 the Town of Manitou was incorporated. In October, 1882, The Colorado Springs Company executed a lease to The Manitou Mineral Water Company for the term of twenty years, and in the said lease an agreement was made to convey the fee of said prop-

erty to The Manitou Mineral Water Company upon
the payment by The Mineral Water Company to The
Colorado Springs Company of the amount to be fixed
by arbitrators as the value of the property. On the
7th of February, 1883, there was recorded in the office
of the clerk and recorder of El Paso county another
plat, entitled: "Plan of the City of Manitou, El
Paso, Co., Colorado." The acknowledgment of this
plat contains practically the same language employed
in the acknowledgment of the plat filed in 1874.
These words also appear: "And the said above
described first plat of the Town of Manitou is hereby
amended so as to conform to this annexed second
plat of the Town of Manitou, placed in its stead, and
hereafter all deeds and conveyances shall refer and
correspond to this amended plat. The roads and
paths through lot 27, block C,   *   *   *   are private
roads and paths, and subject to be closed by mutual
consent of the owners of the lots which bound upon
said roads and paths; also Ellis street and such parts
of lots numbered 13 and 14, block C, of the above
described old plat of the Town of Manitou as is here
laid out as a part of Canon avenue, and the park
therein, are private and subject to be closed as
above." The second plat is dated and acknowledged
the 20th of October, 1882. On this plat the property
involved is designated as lot 37, block A. Officers
of The Colorado Springs Company and the person
who made this map testified that the paths mentioned
in the acknowledgment is the property in question.

The drawing No. 1, filed with this opinion, is a
tracing from the plat filed in the year 1874; No. 2 is
a tracing from the plat of 1883. The land in con-
troversy is shown upon these tracings.

In November, 1898, two suits were brought by the Town of Manitou; one against the International Trust Company et al., and the other against The Manitou Mineral Water Company et al. In the first case, the town asks to have its title to the tract of ground shown on the plats quieted; in the second, it seeks to have the defendants ejected from a certain portion of the premises. It is claimed on behalf of the town that in the year 1872 The Colorado Springs Company subdivided the land then owned by it into lots, blocks, streets and paths, calling the same the ''Town of Manitou,'' and afterwards filed a plat in the office of the clerk and recorder of El Paso county showing said subdivision; that in said subdivision was a certain lot, numbered 36, and a portion of said lot 36 was dedicated to the public, for its use and benefit, as a park; that said ground so described, together with all mineral springs, and appurtenances thereunto belonging, was fully dedicated to the use of the public as a park; and that afterwards the said Town of Manitou was organized, and went into the possession of the public park for and on behalf of the citizens and taxpayers of said town, and from that time has continued in the uninterrupted possession and ownership, for the public as aforesaid, of a large part and portion of said public park; that by the plat of 1883 the springs and paths shown are dedicated to the public.

The dedication claimed is what is known as a common-law dedication.

The defendants deny that there was ever a dedication of the premises in controversy to the public as a park; they deny that they ever intended to dedicate the said premises as a park; they deny that the Town of Manitou ever went into possession of the premises; and allege that, assuming the premises were dedicated, neither the public nor the Town of

Manitou ever accepted the dedication; and that in the
year 1882, before the filing of the second plat, The
Manitou Mineral Water Company entered into the
possession of the property in question, erected valua-
ble buildings upon the same, and expended large sums
of money in the improvement thereof, with the full
knowledge of the authorities of the Town of Manitou.

The plaintiff, in support of its contention that
there had been a dedication and an acceptance thereof,
introduced thirty-six warrants of the Town of Man-
itou, issued during the years 1879, 1880, 1881 and
1882, showing an expenditure, in the aggregate, of
about $500 in the improvement and protection of the
springs.   Several witnesses testified that lots were
sold by the officers of The Colorado Springs Com-
pany with reference to a plat upon which the prop-
erty in controversy was designated as a park.   It
was shown by other witnesses that officers and agents
of the company pointed out to purchasers of lots the
property in question and referred to it as a park, and
induced persons to buy lots of the town company,
in the vicinity of the land in question, upon the rep-
resentation that it was to be a public park.   Several
conveyances were received in which the property in
controversy is mentioned as a park.   Officers of the
company testified that it was the intention of the com-
pany to reserve the property in controversy from sale,
and that they intended to allow the public to have
the free use of the springs and the said premises
while the waters of the springs were not being util-
ized.   That no person was ever authorized to sell lots
upon the representation that the place was a public
park, and declared that they never saw a plat upon
which the name "Park" appeared, as stated by plain-
tiff's witnesses.   The defendants introduced in evi-
dence certified copies of the articles of incorporation
of The Colorado Springs Company, of the lease from

The Colorado Springs Company to The Manitou Mineral Water, Bath and Park Company, of the deed from The Colorado Springs Company to The Manitou Mineral Water Company, and of the amended articles of incorporation of The Manitou Mineral Water Bath and Park Company, changing the name of the company to that of The Mineral Water Company. Also extracts from the records of the Town of Manitou of August 6, 1878, as follows: "Ordered, on motion of F. Hermann, to instruct clerk to correspond with commissioner of public lands in regard to title of the various springs in Manitou;" of May 3, 1880, as follows: "The town attorney, Mr. Hoop, made a verbal report in relation to the park in the central portion of the town; he had found that the title to said park was vested in The Colorado Springs Company, except that said lot never was numbered; and he recommended the board to take steps to condemn said plat of ground for a public park, recommending several ways of doing the same. On motion of A. Hutchinson, Mayor Nichols was appointed a committee of one to confer with The Colorado Springs Company in relation to giving the town title to so much of lot 36 east of private road and in the vicinity of the springs." And of June 17, 1887, as follows: "Moved by Creighton, seconded by Gillis, that the mayor be appointed a committee to secure a deed for the park at junction of Manitou avenue, from The Colorado Springs Company to the Town of Manitou." And of June 21, 1887, "That the mayor secure a contract for a deed to the town of the park at the junction of Canon and Manitou avenues. Carried." And of June 12, 1882: "Resolved. That Nichols, Leddy and Rand be appointed to confer with The Colorado Springs Company in relation to deeding to the Town of Manitou the park between the Cliff House and Soda Springs." Also of March 16, 1883

as follows: "Letter of G. H. Parsons, secretary of The Colorado Springs Company, read in relation to conveyance of portion of park between Canon and Manitou avenues in exchange for present street would be made; but board thought it advisable to know definitely what portion of said park would be conveyed by said company before action was taken in the matter." Also of December 12, 1889: "Special committee of the board of trustees was held on above date, for the purpose of considering the advisability of grading Manitou avenue opposite Navajo Soda Springs and for the purpose of taking steps looking towards the improvement of the ditch running through the park of The Manitou Mineral Water Company. Also April 26, 1893: "Moved by Barker, seconded by Gould, that a committee of three be appointed by the mayor to confer with manager Hunt of The Manitou Mineral Water Company in regard to closing springs, and asking the company to delay for a while. Mayor Grafton explained that he had talked with manager Hunt, who said it was the intention of the company to close the springs only during the night time, after the closing of the pavilion; and after considerable debate, Mr. Barker's motion was put to a vote, with the following results: Ayes, none. Motion lost."

It was admitted that the property in controversy was assessed for taxes every year from 1872 to 1897; subsequent to 1874 and up to and including 1882, it was returned as lot 36, block A, of the Town of Manitou; from 1883 to 1887, inclusive, it was returned as lot 37, block A; taxes were levied for each of said years on the premises for state, county and school purposes and municipal purposes of the Town of Manitou. Taxes were paid from 1872 to 1883 by The Colorado Springs Company, since 1883 by The Manitou Mineral Water, Bath and Park Company,

or its successors, and the town received its proportion of the taxes. The trial was to the court, without a jury.

The court found: "That The Colorado Springs Company did not, in point of fact, ever intend to dedicate any part or parcel of said premises, or any of the mineral springs in controversy or situate thereon, and did not, in point of fact, by any act, declaration of any of its agents, officers or representatives, ever do any act, or make any declaration indicative of an intention to dedicate said premises or springs, or either of them, to the public, either for uses as a park or for public uses for paths, or any character of highway upon or over the premises in controversy, or for any public purposes whatsoever. Further, that The Colorado Springs Company did not, at any time, or in any manner, dedicate, or intend to dedicate, or give or grant to the public, any character of right, estate, interest or easement to the plaintiff in this action, or to the public, in or to the mineral springs situate upon the premises in controversy, or any or either of them. And further, that the defendants did not, nor did either of them, ever intend to, or did in fact, dedicate, donate or grant to the plaintiff or to the public any character of interest, estate, right or easement, in or to the premises in controversy, or any or either of the mineral springs thereon, for any character of public use whatever. Further, that the plaintiff did not in any form or manner ever accept any alleged dedication, relied upon by the plaintiff in this action, either as set forth in the pleadings or as attempted to be shown by the evidence, nor did the public generally by user or otherwise ever accept any such alleged dedication of the premises in controversy for public uses." And the court rendered judgment for the defendants in both causes, from which judgments the plaintiff appealed to the court of appeals, and the

cases were transferred from the court of appeals to this court.

Mr. Charles J. Perkins, Mr. R. E. Lewis, Mr. J. C. Helm and Messrs. Colburn & Dudley, for appellant.

Messrs. Waldron & Devine, Mr. L. M. Goddard and Mr. J. B. Bissell, for appellees.

Mr. Justice Steele delivered the opinion of the court.

Numerous errors are assigned, but the plaintiff relies chiefly upon the assignment which alleges that the court erred in not finding the issues joined for the plaintiff, and in not entering judgment for the plaintiff. The plat of 1874 does not purport to convey this property as a park. It is claimed, however, that the property in controversy appears on the plat like an oblong green leaf in the very center of the town, and is completely segregated from other tracts of ground by highways; that no number or designation of any kind appears on the tract of ground; that these facts show an intention to dedicate as well as a dedication, and authorities are cited which hold that when places appear upon the plat of a city or town without designation, such places are to be regarded as for the use of the public. We cannot agree with counsel that the plat itself is evidence of an intention to dedicate. True, the shape of the lot is somewhat as counsel allege, but there are other portions of the town shown to be of irregular shape. Upon the map of 1874 this portion is colored green; so are very many other portions of the plat. The lots are of various shapes and dimensions, the blocks are not of uniform dimension or shape, and from the plat itself, there being no express designation of this place as a park, it cannot be determined that it was intended as a park.

It is said that the place in controversy does not bear a number. The person who prepared the complaint and the amendments filed intended to describe the alleged park as being a portion of lot 36, block A. It is admitted that the property in controversy, from 1874 to 1883 was returned for taxation as lot 36, block A. The mere fact that a number does not appear below the private road is not of itself sufficient to warrant us in finding that the place in controversy is without designation or number. Moreover, the witness who prepared the original plat testified that lot 36 of block A was intended to include that portion south of the private road, as well as that portion north of it. And in view of the subsequent conduct of the company in referring to the property as lot 36, and selling a portion of it as lot 36, we are of the opinion that the portion lying below the private road was intended by the company to be a part of lot 36. We are strengthened somewhat in this opinion by the statement appearing upon the plat that the paths and roads in lot 36 are private and subject to be closed. There are no paths and roads in lot 36 unless lot 36 includes that portion south of the private road. If the plat then does not show an intention to dedicate or a dedication, resort must be had to the acts and declarations and admissions on the part of the officers of the company from which an intention to dedicate may be implied. An intention to dedicate may be implied; and it is said that the expenditure of public money by the town authorities for the improvement and protection of the springs, used by the public with the acquiescense of the owners of the property, and the sale of lots by a plat on which this property was designated as a park, are sufficient to show an intention to dedicate, a dedication, and an acceptance thereof. It was the duty of the trial judge to determine whether or not The Colorado Springs Company intended to, or did

in fact, dedicate the property in controversy as a public park, and whether, assuming a dedication to have been made, there was an acceptance thereof by the public authorities.   These questions were all determined by the trial judge, and we cannot say, after carefully considering the testimony, that the finding is not supported by the evidence.   This plat of 1874 was filed for record prior to the incorporation of the Town of Manitou.   But it is said that the public accepted the dedication of the park before the incorporation and that the town authorities have had possession of the park since the incorporation.   Upon this issue the court decided that the public had not had the use of the park at all times since 1874, and that there had been no acceptance thereof on the part of the public.   The right of the public authorities to public property conveyed by dedication depends altogether upon whether there has been an acceptance, express or implied, of the dedication.   Where the proprietor of lands sells lots with reference to a plat on which a public place is designated, he is estopped to deny the existence of such public place, because of his representation that there is and will be such a place devoted to public use; but the right to have such place devoted to public use is a right to be exercised by the grantee only, and the city authorities cannot base their right to a public place upon the single act of the proprietor of land selling lots by a plat upon which a public place has been designated.   There must be an acceptance of the dedication by the public authorities, and until such acceptance the act of the proprietor in selling lots amounts to a mere offer to dedicate, and may be withdrawn.   It is not claimed that the plat with reference to which lots were sold, and upon which the park was designated, was ever filed for record, nor is such plat produced; nor was there any testimony showing, or tending to show, that the au-

thorities of the Town of Manitou ever expended money upon, or took possession of, any part of the ground in controversy by virtue of such implied dedication.   We are therefore unable to determine either that the court misconceived the testimony, misapplied the law applicable thereto, or that his finding was contrary to the weight of the evidence in holding that there was no dedication of the property in controversy as a public park, implied from the sale of lots by reference to a plat upon which a park was designated.

Upon the plat of 1883 paths are shown across the property in controversy, and within the lines of these paths several of the springs in controversy appear. On the plat of 1874 the paths in lot 36 are reserved as private paths; on the plat of 1883 the paths through lot 37, the property in controversy, are not designated as private paths.   If there were no other evidence than these plats before us, we should be bound to hold that The Colorado Springs Company had dedicated the paths and springs to the public by the plat of 1883; but it appears that prior to the recording of this plat, all of the property in controversy— lot 37, the springs thereon, and the buildings—were leased to The Manitou Mineral Water Company, and the contract entered into mentioned in the statement of facts.   It also appears that subsequently The Colorado Springs Company sold and conveyed to The Manitou Mineral Water Company by warranty deed the lot and the springs.   It further appears that prior to the recording of the plat of 1883 some of the springs were closed, buildings erected upon the paths, possession of the entire property taken by The Manitou Mineral Water Company, and that since that time The Manitou Mineral Water Company has paid the taxes on the property; and there is no testimony showing that the Town of Manitou, since that time,

has expended any money in the improvement of these springs. At the time of the recording of this plat The Colorado Springs Company could not dedicate this property to the public without the consent of The Manitou Mineral Water Company; and we must hold that as far as the springs and the paths shown upon the plat of 1883 are concerned the company not only did not intend to dedicate, but had no authority to dedicate the property to the public.

We do not think the fact that The Mineral Water Company took the property by reference to a new plat of the Town of Manitou, assuming the new plat to be the one which was filed in 1883, is important. At that time the lease and contract was executed, the public had no right to the paths and springs shown upon the plat of 1883, and when the company put The Manitou Mineral Water Company into possession of this property it could not subsequently dedicate a portion of it to the public. And it could not have been the intention of either of the parties to this lease to permit the public to have an easement in the springs or paths, and we can find nothing in the testimony which would warrant us in holding that the finding of the court in reference to this alleged dedication is contrary to the law or the weight of the evidence. It appears that for a great number of years these springs have been open to the public with but slight restrictions, but that fact alone is not sufficient to warrant a court in finding that there has been a dedication of the property to the public, or that there has been an acceptance of it by the public or by the public authorities. The action of the town board, as shown by its record, is conclusive, it seems to us, that the town board did not regard the park or the springs as public property. Refusing to convey a portion of a street in exchange for a portion of this park, upon the ground that the offer did not definitely state what

portion of the park was to be conveyed, is not consistent with a claim of ownership to the park which was to be conveyed. The town trustees themselves could not have believed that there was a dedication of the park or an acceptance by the public, for at a meeting of the council in 1880, after hearing the report of their town attorney that the title to the park was vested in The Colorado Springs Company, and the recommendation that steps be taken to condemn, the town council appointed a committee to confer with The Colorado Springs Company in relation to giving the town title to a portion of the park now claimed. And we regard the action of the town authorities in calling a special meeting of the town council for the purpose of taking steps looking toward the improvement of the ditch running through the park of The Manitou Mineral Water Company as at least significant. And think that the records of the town reciting that it was moved and seconded that a committee be appointed to confer with the manager of The Manitou Mineral Water Company in regard to closing springs and asking the company to delay for a while, and that when it was explained by the mayor that it was the intention of the company to close the springs only during the night time, after the closing of the pavilion, the motion was unanimously lost, should not be ignored. In fact, from the records of this town, covering a period of more than fifteen years, nowhere does it appear that the town has claimed the right to the property in controversy, but, on the contrary, has constantly been dealing with The Colorado Springs Company and The Mineral Water Company as though these companies were the proprietors of the park, and the Town of Manitou had no authority or control over it.

On the other hand, the conduct of The Colorado Springs Company appears to have been entirely con-

sistent with its claims that the property was never dedicated to the public. At no time was the control of the property surrendered by The Colorado Springs Company to the town or the public, and the town authorities have never been in the possession thereof. The expenditures made by the town in the improvement of the springs were made at the suggestion of the officers of the company, and the town authorities consented to contribute money to keep them in repair, because the public was permitted to use the springs, and not because they were the property of the town. The Colorado Springs Company was incorporated for the very purpose of utilizing the water of these springs. By its first plat the paths and roads in the vicinity of the springs were reserved as private; by its second plat the park was reserved as private. It paid the taxes on the property each year during the term of its ownership. It spent large sums of money in improving the springs and in beautifying the park. Under such circumstances user by the public cannot defeat the title.

If lots have been sold by the officers of the company upon the representation that the park and the springs were public property, or with reference to a plat on which the place was designated as public property, the purchasers of such lots, not the town authorities, in the absence of an acceptance, can complain.

Upon every issue raised by the pleadings and by the evidence, the court found in favor of the defendants, and we cannot say the finding is not supported by the evidence.

The judgment must be affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL not participating.

*Upon Petition for Rehearing.*

By Mr. JUSTICE STEELE.

In the opinion, it was held that municipal authorities cannot base their right to public places upon the act of a proprietor of land in selling lots by reference to a plat upon which such public places are designated; and that, until there has been an acceptance, the act of the proprietor in selling lots amounts to a mere offer to dedicate and can be withdrawn. In the petition for rehearing, it is stated that this holding is contrary to the doctrine announced in *City v. Clements,* 3 Colo., 472; *Ward v. Farwell,* 6 Colo., 66; *Mouat v. City,* 21 Colo., 1. The position of counsel is, in the main, correct, and we withdraw the statement.

While it was held in the Clements case, that "although until acceptance, the city was under no obligation to repair, the proprietor was nevertheless bound by his acts," and that the city could take possession of the streets shown on the map by which sales of lots had been made by the proprietor, whenever the growing business interests of the city necessitated the use of such streets as public highways, this court, in *Denver v Santa Fe R. R.,* 17 Colo., 583, held that "unless otherwise provided by statute, a dedication without acceptance is, in law, merely an offer to dedicate, and such offer does not impose any burden, nor confer any right, upon the public authorities, unless the road is accepted by them as a highway;" and this language of Justice Elliott was quoted with approval by Justice Goddard in *Trine v. Pueblo,* 21 Colo., 102.

In the case of *Mouat v. Denver,* 21 Colo., 1, it was held, that sales of lots by reference to a plat upon which streets were designated "show an offer to dedicate on the part of the owner, which offer he may

not withdraw at his pleasure. This does not, however, do away with the necessity for acceptance, and the city may, under certain circumstances, lose its right to accept.''

In the case of *Overland Machinery Co. v. Alpenfels, ante,* 163, Chief Justice Campbell, speaking for the court, said: ''When Case & Ebert laid out their addition and filed their plat, on which there was delineated Depot street, though no statutory dedication was made, and there was no acceptance by the city, so as to constitute such act a common-law dedication, yet, as between the owners of the addition and the purchasers of lots who bought with reference to the plat, the owners, though not the city, would be estopped to deny the existence of Depot street as a public highway.''

By these decisions, it is settled:

That the sale of lots by reference to a recorded map or plat upon which are shown public places is an offer to dedicate such public places to public use, and that the offer may not be withdrawn at the pleasure of the grantor.

That there must be an acceptance, express or implied, of such offer by the public authorities within a reasonable time; and that unless the offer is accepted within a reasonable time, the public may lose its right to accept.

That the question as to whether there has been an acceptance within a reasonable time, depends upon the facts and circumstances of the particular case.

That within a reasonable time after an offer to dedicate, as shown by the sale of lots, the public authorities may take possession of public places designated as such on a plat or map, and, in doing so, may rely upon the act of the grantor in making sale of lots by reference to such map or plat.

That unless the public authorities, within a reasonable time, accept such offer to dedicate, they lose their right to accept, and the municipality loses its right to the places designated on such plat as public places.

The sale of lots which the town now claims as one of the acts showing a dedication occurred nearly twenty-five years prior to the bringing of this suit. During all of that time, the original proprietor and its grantor have been in the possession of the property, and the Town of Manitou, through its public officials, has recognized, as shown in the opinion, the appellee and its grantor as the proprietors of the property. Whatever may be the right of persons who bought lots from the agent of the town company upon the representation that the property in question was a public park, the municipality cannot, after such length of time, in the absence of an acceptance, base its claim to the property upon such sale and representation; nor can it claim the property by virtue of prescription, for, although the public has had the use of the park and springs for many years, the use was not adverse, exclusive, nor uninterrupted.

The opinion is modified, and the petition for rehearing is denied.

Mr. Justice Gabbert concurring specially.

I fully concur in the conclusions announced, that the judgment of the trial court should be affirmed, and that a rehearing should not be granted. The issue between the parties was, whether or not there had been a dedication of the disputed premises to the public. The determination of this issue depended upon two disputed questions of fact: (1) Whether or not there had been an offer to so dedicate such premises; and (2) if there had been, had the municipal authorities accepted such offer? The trial court

found in favor of the appellees on both these questions. As to the second, there is certainly no question from the evidence, that the alleged offer to dedicate had never been accepted. As to the first, the most that can be claimed for the testimony that the company had sold lots with reference to a plat upon which these premises were designated as a park, is, that it may have been material, but the subsequent action of all parties concerned tended clearly to dispute these statements, not in direct terms, it is true, but because, from the facts and testimony noticed in the opinions of my associate, it appears that such action was wholly inconsistent with any testimony which might tend to prove the offer to dedicate. These were matters which it was the province of the trial judge to consider in determining what was established from the testimony bearing on the first question. Having determined it in favor of the appellees, and the testimony being sufficient to sustain this finding, it can not be disturbed. This being the case, it is wholly unnecessary to determine in what circumstances the rights of the parties would or would not attach if an offer to dedicate had been established. I therefore concur in the conclusions announced solely upon the ground that the findings of the trial court on the questions of fact upon which the determination of the main issue between the parties depended, are fully supported by the testimony, and hence express no views on any other questions discussed.