[No. 2468.]

Coffin v. Johnson et al.

**1. Appellate Practice—Findings—Equity Proceedings.**

The rule that the findings of fact of the trial court upon conflicting evidence, where there is substantial evidence to support them, are conclusive upon the appellate court, applies to suits in equity as well as in actions at law.

**2. Evidence—Fraud—Conveyance—Trusts and Trustees.**

In an action to have the grantees of certain interests in a mining claim declared to hold the same as trustees for the grantor on the ground that the conveyance from the grantor was procured through fraud, the evidence examined and held sufficient to support the findings of the trial court in favor of defendants.

*Error to the District Court of Arapahoe County.*

Messrs. Patterson, Richardson & Hawkins and Mr. C. H. Pierce, for plaintiff in error.

Mr. Charles J. Hughes, Jr., and Mr. Gerald Hughes, for defendants in error.

Gunter, J.

Plaintiff in error sued to hold Johnson, Shear and Reynolds as trustees of certain mining property, and certain shares of stock, and for other relief. Defendants had a decree. Therefrom the case is here.

The complaint is quite lengthy. Its material averments are: Plaintiff and one Smith located the New York mining claim, this location conflicted with the Last Chance and Annie Rooney lodes. The owners of the Last Chance brought suit to protect their right to the area in conflict. Other litigation involving the title of plaintiff and Smith was threatened. Plaintiff and Smith were without means to defend their claim. They authorized Timmons, an old friend of plaintiff, in whose judgment and integrity she had great confidence, to contract with some one for the defense, and, so empowered, he contracted with Byron E. Shear. By the contract Shear was to provide funds for the defense of the title, the development of the property, and the obtaining of a patent, and upon his performance plaintiff and Smith were to convey to him an undivided one-half interest in the claim. This agreement was in writing and drawn by defendant Johnson, who had been employed by defendant Shear to carry on the litigation covered thereby. At the making of the contract Johnson advised the conveyance of the claim by plaintiff and Smith to some one a non-resident of this state and a citizen of another state. This he represented was for the purpose of giving the federal court jurisdiction of litigation involving the claim. A deed was made, and, as advised by Johnson, to A. L. Shear, a resident of New York state and the father of Byron E. Shear. Before the making of this contract and deed Byron E. Shear, Timmons and defendants Johnson and Reynolds had formed a partnership for the acquisition of mining property, and had

conspired together to secure for the partnership the interest of plaintiff in this particular claim for practically a nominal consideration. They hoped to accomplish this through the friendly relations known to exist between Timmons and the plaintiff and her husband. In furtherance of this scheme, through the aid of Timmons and Johnson, the contract and deed were secured, the Shears taking the interest covered by the contract and deed for the use of said partnership. Plaintiff was at the time, and until the institution by her in November, 1893, of an action to obtain relief from the contract and deed, ignorant of the said partnership and conspiracy, and was ignorant that Johnson, Timmons or Reynolds had any interest in said contract or deed. Shortly after making said contract, suits were instituted by Johnson in the name of A. L. Shear in the United States circuit court to assert the rights of the owners of the New York lode against the claims of the owners of the Last Chance lode. In furtherance of their scheme to acquire the interest of plaintiff in the New York lode for a nominal consideration Johnson and his partners concealed from her the condition of the litigation thus instituted to assert her rights, and repeatedly represented to her that the results thereof were very uncertain, and that the claims of the owners of the Annie Rooney lode were of a grave character, and frequently impressed upon her the wealth, influence and litigious character of such adverse claimants. In furtherance of their scheme Johnson and his partners instigated one Cole to bring suit against plaintiff and Smith to recover under a grub-stake contract an undivided one-third interest in the New York lode. This suit they represented to plaintiff raised serious questions against her claim. From time to time Timmons, Johnson and Reynolds suggested to plaintiff that she could sell her remaining interest,

an undivided one-fourth; that if she failed to do·so, she might, through said adverse claims, lose it entirely. Timmons pretending to be plaintiff's friend, and deeply interested in her welfare, advised her to sell. Relying on his representations, and those of her attorney, Johnson, and induced by them, plaintiff conveyed her remaining interest in the New York lode to Timmons for the use, as she understood, of Shear, at much less than its value.

All of such representations were false, and known by said partners to be so when made. There was no merit in any one of the claims hostile to the title of plaintiff and Smith, and such fact was known to Shear, Reynolds, Johnson and Timmons before the sale of plaintiff's last interest. Prior to this conveyance the differences with the Last Chance and the Annie Rooney owners had been settled, or favorable negotiations had been entered upon, which fact, as to such hostile claims, was carefully concealed from plaintiff by Johnson, Timmons, Reynolds and Shear.

The deed conveying the last interest of plaintiff to Timmons for the use of Shear was made April 30, 1892. June 16, following, the litigation with the owners of the Last Chance claim was formally settled and the area in conflict conveyed by Johnson, Reynolds and Shear to The New York and Chance Mining Company—Johnson, Reynolds and Shear receiving shares of stock in that corporation for the interest in the New York lode thus conveyed. Upon this interest in the stock dividends had been paid. Title to part of the New York lode is still in Johnson, Shear and Reynolds.

Plaintiff seeks to hold Johnson, Shear and Reynolds as trustees of one-half of the part of the New York lode yet in their names, and for one-half the certificates of stock issued to them for their interest

in the New York lode conveyed to the above company, also for other relief.

It is thus alleged that, by the contract of October 21, 1891, plaintiff agreed through her agent, Timmons to sell an undivided one-fourth interest in the New York lode to a partnership composed of this agent, Timmons, her attorney, Johnson, Shear and Reynolds, that she was then, and long thereafter, ignorant of the existence of the partnership, or that Timmons, Reynolds or Johnson was to any extent interested in the contract; that this contract and the deed to A. L. Shear were procured in furtherance of the pre-existing scheme of the said partners to defraud plaintiff of her interest in the New York lode. It is further alleged that, by this fraudulent concealment of the facts which it was the duty of her attorney, Johnson, and the other members of the partnership to impart to plaintiff, and by fraudulent representations, she was induced to make, for a nominal consideration, the deed of April 30, 1892, conveying the remaining interest held by her in the New York lode. It is contended that the contract and deed of October 21, 1891, should be set aside because procured through fraud, and because the contract was not faithfully observed; that the deed of April 30, 1892, should be set aside because obtained through fraud.

The material allegations of the complaint were denied by the answer. The case was tried to the court, which found the issues for defendants, specially finding:

"No partnership was formed on October 21, 1891, between the defendants, or any of them, or any contract with reference to an ownership in the New York lode mining claim, other than an agreement made between the defendants, Byron E. Shear, I. L. Johnson and one Colin Timmons, relative to the em-

ployment of counsel, and the taking of steps to protect the title of the New York lode mining claim, made in October, 1891; that the defendant, Reynolds, did not become interested in the New York lode mining claim until between the tenth and fourteenth days of December, A. D. 1891."

As to the performance of the contract of October 21, 1891, the finding was:

"That the things to be done under the provisions of the contract in writing of October 21, 1891, signed by George K. Smith, the plaintiff, Mary A. Coffin, and said Colin Timmons, were at no time neglected, but that counsel was employed, expenditures made, and the litigation conducted thereunder progressed as rapidly as is usual in such litigation, and that at no time were any complaints made by the plaintiff of or in regard to the conduct of said litigation."

As to the alleged concealment and fraud inducing the deed of April 30, 1892, the court found:

"That the plaintiff or her husband, who transacted all of her business for her, and fully represented her by her authority, in all matters connected with or relating to her interest in the said New York lode mining claim, was fully acquainted and familiar with all the facts upon which the plaintiff relies to recover in this suit at the time she made the sale to defendant Reynolds, on or about April 30th, 1892, of her remaining interest in said New York lode mining claim; that Samuel D. Coffin was acting for, and was by the plaintiff fully authorized to act for her with reference to the sale and disposition of her interest in the New York lode mining claim, and was for her endeavoring to sell the interest of the plaintiff in the New York lode mining claim, and the plaintiff had, in fact, given an option for the sale of her interest in said New York lode mining claim before she sold to the defendant Reynolds in April, 1892, and

that at the time she gave said option, and at the time she sold to said defendant Reynolds, she and her husband were thoroughly familiar with the conditions of said New York lode mining claim, the condition of the litigation with reference thereto, with the values involved in said litigation, and the interests of the defendants, Reynolds, Johnson and Byron E. Shear in said New York lode mining claim, and knew that said Colin Timmons, to whom she transferred an interest in said claim in order to procure the protection of said title, had sold his interest therein to said Reynolds and Byron E. Shear, or one of them. * * * That the defendant, I. L. Johnson, was one of the attorneys for all the owners of said New York property; that for his services in connection with said New York property he acquired a one-sixth interest in said New York lode mining claim from Colin Timmons; that said defendant Johnson was not connected with or interested in any manner in the purchase made, either from the plaintiff of her interest in said New York lode mining claim, or in the purchase made from her husband, Samuel D. Coffin, of an interest obtained by him from George K. Smith, and that said defendant, I. L. Johnson, acquired no interest in the New York lode mining claim which he holds in trust for the plaintiff."

These findings were upon material issues. If there was substantial evidence in their support, we are concluded by them.—*Jones v. Sullivan*, 3 Colo. App. 406, 22 Colo. 224; *C. F. & I. Co. v. Pryor*, 25 Colo. 540; *Gregory v. Fillbeck's Estate*, ante, p. 131, 77 Pac. 369.

The same rule obtains as to suits in equity as in actions at law.—*Hazeltine v. Brockway*, 26 Colo. 291, 296; *Newlon-Hart Gro. Co. v. Peet*, 18 Colo. App. 147; *Town of Manitou v. National Trust Co.*, 30 Colo. 467.

Upon every material issue in the case the evidence was conflicting. There was evidence for plaintiff that the contract of October 21, 1891, was intended by her to be, and was, only with Shear, and that the plaintiff did not know until after the deed made by her, April 30, 1892, that Johnson, Timmons or Reynolds had any interest as owners therein, as partners or otherwise; further, that she was fraudulently induced to enter into this contract and to make the deed to A. L. Shear, and that she was fraudulently prevented from having copies of this contract and deed. The testimony of Timmons, Johnson, Shear and Reynolds was that no such partnership at any time existed, and that no fraud was practiced upon plaintiff in procuring the contract and deed. The testimony of Timmons and Johnson was that plaintiff was not fraudulently prevented from having copies of the contract and deed, and that plaintiff and her agent, her husband, knew of the interests acquired by Shear, Johnson, Reynolds and Timmons, and so knew at the time they acquired their respective interests therein, and consented to their taking such interests.

As to this contract, the testimony for defendants was, that plaintiff and Smith agreed by written contract to give Timmons an undivided one-half interest in the New York lode, and thereby they gave him such interest, covenanting therein to give him later a deed therefor, when he should have performed the terms of the contract; which were, that Timmons should provide counsel for the defense of the New York claim, money for its defense and patent, and $1,800.00 for its development.

The testimony for defendants further was that Timmons immediately made a contract with Shear to perform these conditions, and, as a consideration therefor, assigned to Shear and Johnson each one-

third of the one-half interest in the New York lode acquired by him under said contract; that plaintiff was fully informed of such contract at the time, and consented thereto.

There was testimony for defendants that about December 10, 1891, Timmons assigned one-half of the one-sixth interest remaining in him to Reynolds, and Johnson one-half of his one-sixth interest to Reynolds and Shear; and that about April 13, 1892, Timmons sold his remaining interest to Reynolds, and that plaintiff and her husband knew of such transactions before making her deed on April 30, 1892, and made no objection to any one of them.

There was evidence for defendants that counsel was procured to assist and defend the rights of the owners in the New York lode, $5,000 provided for its development, and the contract in all particulars observed. There was no complaint that the contract of October 21, 1891, was not kept until the institution of a suit by plaintiff in November, 1893, to annul the contract, which action abated.

As to the purchase of the Cole suit by Reynolds in April, 1893, according to the testimony for defendants, the bringing of this action was not instigated by Reynolds, Timmons, Shear or Johnson, it raised serious questions against their interests in the New York claim, and its purchase was fully justified by the hostile and treacherous attitude assumed by appellants with reference to the interests of Johnson, Shear and Reynolds in that claim. As to the refusal of Johnson to defend this action, according to the testimony of defendants, the defense thereof was not claimed by plaintiff to be within the contract of October 21, 1891, and the conduct of plaintiff through her agent, her husband, justified Johnson in withdrawing from its defense.

We think there was evidence in support of the

findings of the trial court that, at the time of the making of the contract of October 21, 1891, the alleged partnership did not exist; that Timmons did not, as the agent of plaintiff, sell to a partnership of which he was a member; that Timmons assigned his interest therein to Johnson, Shear and Reynolds, with the knowledge and consent of plaintiff; that no fraud was practiced in securing this contract and the deed to A. L. Shear, and that the terms of this contract was observed.

As to the alleged fraud in securing the deed from plaintiff to Reynolds of April 30, 1892, by falsely representing to plaintiff that the claims of those asserting rights hostile to those held by the plaintiff and defendants Johnson, Shear and Reynolds in the New York lode and concealing the state of the litigation involving this claim, there was evidence for defendants that Johnson and Timmons frequently talked over the litigation with plaintiff and her husband and kept them fully advised as to it.

There was much in the evidence adduced by plaintiff from which the trial court could have reasonably concluded that she and her husband were fully informed as to the state of the litigation, her rights in the property and its prospective value.

As to the charge that all litigation adverse to the ownership of plaintiff and defendants Johnson, Shear and Reynolds, of the New York lode had been settled prior to the deed of April 30, 1892, and the concealment of this fact from plaintiff, the findings of the lower court were:

"The court doth find that there has been no settlement made between the defendants, or any of them, and the owners, or any of them, of the Last Chance lode mining claim, of the litigation or controversy existing between the owners of the New York lode mining claim and the Last Chance lode mining claim,

mentioned in the complaint, at or prior to the time of the sale made by the plaintiff to certain of the defendants, of her interest in the New York lode mining claim, in April, 1892, nor was there a settlement thereof in contemplation at the time she sold her said interest or made the contract of sale therefor.''

There was abundant testimony that the litigation was not settled, nor had favorable negotiations been entered into prior to April 30, 1892.

There was evidence that plaintiff, after being fully informed as to all of her rights, decided to make the sale evidenced by her deed of April 30, 1892, made the sale and received for her interest therein their then reasonable value.

It would serve no useful purpose to discuss in detail the vast volume of evidence in this case, and it is impracticable to do so. The findings were upon material issues, and were for the defendants. There was evidence to sustain the findings, and we are concluded by them.

Judgment affirmed.

*Affirmed.*