CITY OF GREENWOOD VILLAGE, Colorado, a municipal corporation, Plaintiff-Appellee and Cross-Appellant,

v.

Grant D. BOYD and Gay A. Boyd, Virgil E. Carrier and Rita D. Carrier, Thomas C. DeFeo and Lowell E. DeFeo, Howard L. Edwards and Carolyn B. Edwards, and Robert G. Good and Mary S. Good, Defendants-Appellants and Cross-Appellees,

and

Gerald J. Alger and Barbara J. Alger, the Capitol Savings Service Corporation, a Colorado corporation, Robert T. Barbour, Michael Bernstein and Paula R. Bernstein, David L. Daggett and Constance I. Daggett, William F. Mara and Mary E. Mara, Wilbur Bruce and Kim D. Wilson, Paul J. Queger and Bonnie Michelette, Anthony R. Dawson and Jill Dawson, Defendants.

No. 78–1074.

Colorado Court of Appeals,
Div. III.

Jan. 22, 1981.

Banta, Hoyt, Malone & Banta, P. C., R. Val Hoyt and Stephen G. Everall, Englewood, for plaintiff-appellee and cross-appellant.

Grant, Rotole, Owen & Walker, Larry L. Grant, Denver, for defendants-appellants and cross-appellees.

George Mabry, Littleton, Wallis Campbell, Lakewood, for amici curiae James Styers and Constance Styers.

VAN CISE, Judge.

Defendants Boyd, Carrier, DeFeo, Edwards, and Good appeal a judgment declaring a dedication of an easement to the plaintiff City of Greenwood Village (the city) for the benefit of the public. We affirm.

In September 1972, the city council amended its zoning ordinance and approved a plat and planned unit development (PUD) plan for a 160 acre parcel of land known as the Green Oaks subdivision. In February 1973, the council approved by resolution a replat of Green Oaks involving minor corrections unrelated to this litigation; the PUD plan was not changed. These documents were duly recorded. In conjunction therewith, defendant First Capitol Corporation (the original owner and developer) executed and recorded a declaration of protective covenants.

This case involves a strip of land varying in width from 20 to 50 feet on the perimeter of the northerly and westerly portion of Green Oaks and designated as "green belt" on the subdivision plat and PUD plan and on the replat. In 1977, a controversy developed over encroachments within a portion of the northerly green belt abutting lots 81 to 94. As a result, this action was commenced by the city against the developer and the owners of those lots, seeking to quiet title to the green belt and to compel removal of the encroachments.

The developer was a passive participant. The city settled with all individual defendants except appellants and the Bernsteins, and the settling defendants were dismissed out of the action before trial. As to the non-settling defendants, the trial court determined that the green belt had been statutorily dedicated to the public, and therefore to the city, as an easement for open space and non-motorized traffic, including horse traffic, and that these defendants had to remove the encroachments they had made into the green belt.

The appealing lot owners contend that there was never a valid dedication of the green belt. The city cross-appeals on the ground that the dedication was in fee simple rather than as an easement. The amici curiae join in the city's contention. The Bernsteins have not appealed.

In the recorded plat and PUD plan and in the replat it is stated that the developer does "hereby dedicate to the public all roadways and easements for purposes shown hereon" and that "[a]ll areas designated as green belt are also reserved as utilities and drainage easements." Both plats show a clearly marked strip containing random pattern dots within the strip, labeled at various places "green belt."

The PUD plan specifies that set back requirements from the green belt are 20 feet. On that same plan are notes that provide:

"Horses may be kept in Lots 1–25 only. Horse traffic shall be limited to Lots 1–25, Tract 'H', the major northerly greenbelt and westerly greenbelt.

.        .        .        .        .

"A fence not to exceed 2 (two) feet in height, to delineate greenbelts, shall be provided to greenbelt standards by each abutting property owner ... on greenbelt lines as shown on plan within the property. A split rail fence not to exceed 6 (six) feet in height shall be erected by abutting property owners ... to delineate greenbelts where horse traffic is allowed....

"Final grading of greenbelts to be performed by Capitol Savings Service Corporation. All landscaping in greenbelts shall be installed and maintained by the abutting property owners to the center line of said greenbelts except the landscaping of major greenbelts (as designated on plan) which will be installed and maintained by the greenbelt commission of the City of Greenwood Village ...."

■ From the above, the court properly concluded that the dedicating language in the plat and replat of Green Oaks was "not clear and unambiguous although it imports some reservation of a green belt area." Therefore, parol evidence was admissible to enable the court to determine whether the developer intended to, or did in fact, dedicate the green belt areas to the public. *Town of Manitou v. International Trust Co.*, 30 Colo. 467, 70 P. 757 (1902).

■ Parol evidence showed that some long time residents of the city, with the ostensible permission of the then owners, had used the area now designated as the northerly green belt for horse traffic many years prior to the dedication of Green Oaks. Some residents rode their horses in this area during the construction of the homes owned by defendants. The city's mayor testified that, during the time when the city accepted the plat and PUD plan, the green belt area was set aside for open space and non-motorized traffic, including horse traffic; that the city agreed with the developers to retain the green belt area under the control of the city; and that the northerly portion of lots 81 through 94 was to provide for horse traffic. The former city planning director recalled that the northerly green belt was understood to be along the whole north boundary and that this green belt would be an easement and not fee simple title. The developer's planner stated that he understood the green belt to have been mandated by the city for horse and pedestrian traffic, and he planned it that way.

Defendants-appellants Good, Boyd, and Edwards acknowledged the existence of the green belt and the limitations on their use thereof as abutting property owners, but denied knowledge of any horse usage of this green belt. However, there was evidence that "horse trail" signs had been posted at at least two locations in 1976, prior to defendants' purchase. The owners also acknowledged that their respective title commitments expressly excepted the green belt area.

The documents and the parol evidence support the court's finding that the developer intended, by the language in the plats and PUD plan, to dedicate to the city, for the public, the areas designated as the westerly and northerly green belts, for open space and non-motorized traffic including horse traffic. Being supported, this finding is binding on appeal. *Town of Manitou v. International Trust Co., supra.* From the approvals on the plat and replat signed on behalf of the planning commission and the city council, and the adoption of the amendment to the zoning ordinance and of the resolution approving the replat, there is no question but that the public authorities accepted the dedication. Therefore, there was a dedication of the green belt areas for the purposes set forth above.

■ There is a dispute between the parties as to whether this was a "statutory" (*see* § 31–23–107, C.R.S.1973 (1977 Repl. Vol. 12)) or a "common law" dedication. A statutory dedication operates by way of grant and ordinarily conveys the full fee title to the subject property, whereas a common law dedication operates by way of "estoppel in pais" and ordinarily conveys only an easement. *Buell v. Redding Miller, Inc.*, 163 Colo. 286, 430 P.2d 471 (1967); *City of Leadville v. Coronado Mining Co.*, 37 Colo. 234, 86 P. 1034 (1906).

However, in the instant case, the language of dedication, "dedicate to the public all roadways and easements for purposes shown hereon," buttressed by the other evidence, was sufficient only to convey to the public the use of the green belt area for the limited purposes specified above plus concurrent use of the area for utility and drainage easement purposes. As found by the trial court, the developer and the city intended the dedication to be in the nature of an easement. There was nothing to show any intention to convey anything more. However categorized, here there was a grant of an easement involving only so much of the surface and subsurface as needed for these specified purposes. *See City of Leadville v. Bohn Mining Co.*, 37 Colo. 248, 86 P. 1038 (1906).

Judgment affirmed.

PIERCE and BERMAN, JJ., concur.